## Murray versus Commonwealth.

79  311
189  646

79  311
f227  3 89

1. In a case of homicide, if there be an antecedent threat and a present provocation, it is for the jury to find whether the killing was in pursuance of the previous threat or of the immediate provocation.

2. On a trial for homicide, the court below affirmed the following point submitted by the Commonwealth : " When a deliberate purpose to kill or do great bodily harm is ascertained, and there is a consequent unlawful killing, the provocation, whatever it may be, which immediately precedes the act, is to be thrown out of the case and goes for-nothing, unless it can be shown that this purpose was abandoned before the act was done." Held to be error.

3. When it is sought to convict of murder in the first degree, the burden

is upon the Commonwealth to show the circumstances necessary to raise the offence above murder in the second degree.

4. A man need not be in actual imminent peril of his life or of great bodily harm before he may slay his assailant; it is sufficient if in good faith he has a reasonable belief from the facts as they appear to him at the time, that he is in such imminent peril, even if it afterwards appear that he was mistaken.

5. It is not proper practice for the Commonwealth, in a capital case, to submit points to the court below.

6. An obscure answer to a point may be cured by the general charge, but not one that is palpably erroneous.

7. Commonwealth *v.* Drum, 8 P. F. Smith 9, adopted.

October 1875. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Oyer and Terminer of *Allegheny county:* Of October and November Term 1875, No. 194.

Philip Murray was indicted in the court of Oyer and Terminer of Allegheny county for the murder of James White, and tried April 13th 1875, before Ewing, P. J., and Kirkpatrick, J., of the Court of Common Pleas, No. 2, of the same county.

Two jurors drawn were challenged by the Commonwealth for cause, and the challenge sustained; a bill of exceptions was sealed for the prisoner.

The matters considered and decided by the Supreme Court do not require a statement of the evidence in the case, further than appears in the charge of the court below.

The District Attorney submitted the following points for the Commonwealth:—

1. When a deliberate purpose to kill or do great bodily harm is ascertained, and there is a consequent unlawful act of killing, the provocation, whatever it may be, which immediately precedes the act, is to be thrown out of the case and goes for nothing, unless it can be shown that this purpose was abandoned before the act was done.

2. If the jury find from the evidence that before the killing the prisoner had formed the deliberate intent and purpose to take the life of James White, no subsequent provocation which deceased might have given, would either excuse the prisoner or reduce the grade of his offence, unless the jury are satisfied from the evidence that the said intent and purpose were abandoned by the prisoner before the killing.

6. To make homicide excusable on the ground of self-defence, the danger must be actual and urgent. No contingent necessity will avail. And when the pretended necessity consists of the as yet unexecuted machinations of another, the defendant is not allowed to justify himself by reason of their existence. In cases of personal conflict, also in order to prove such defence, it must appear that the party killing had retreated, either as far as he could by reason of some wall, ditch, or other impediment, or as far as the fierceness

[Murray v. Commonwealth.]

of the assault would permit him.   If it appears that the conflict was in any way premeditated by the defendant, the defence can no longer be set up.   It must be proven that the assault was eminently perilous.

The court, Ewing, P. J., said :—

" These points are all affirmed, subject to explanations of the general charge."

The court charged :  *  *  *

" All homicide is presumed to be malicious until the contrary appears by the evidence.   That is, all homicide, as a general rule, is malicious, unless when justified by the command or permission of the law—excused on account of accident or self-defence—or alleviated into manslaughter—by being the involuntary consequence of some act not strictly lawful, or occasioned by some sudden and sufficiently violent provocation without time to cool.   And when the killing by the defendant has been proven, all these circumstances of justification or excuse, or alleviation, it is incumbent on him to make out to the satisfaction of the jury.   Just as when the Commonwealth, by proving the homicide, having raised a presumption of murder at common law or of the second degree, must prove in addition a specific intent to take life to entitle it to a verdict of murder in the first degree.

" To excuse a homicide on the ground of self-defence the defendant must satisfy you that the conflict was not of his own seeking ; that he was in danger of great bodily harm, or honestly believed that he was in such danger, and that either he retreated as far as he safely could under all the circumstances, place of conflict, situation and condition of the parties at the time, or could not safely retreat and that the danger was actual and urgent.   If the killing was thus done, it is excusable.   But if not so done, it is not excusable.   If the conflict was not premeditated on the part of defendant, but was accidental, and the shooting not in self-defence, but in the heat of passion the fatal shot was fired, without cooling time, it would be manslaughter.   If the defendant, with a purpose to have a quarrel with White, went armed with his pistol to the mill where White was at work, and sought White, and met him intent on this purpose, and in the conflict he killed White, it was murder.   And if he thus killed White wilfully and premeditatedly, that is with a specific intent to take life, it would be murder of the first degree.

" The intent of a man is to be inferred from his words, but perhaps more safely from acts; where the words and acts accompany each other and are consistent, they form satisfactory proof of intent.   If a man uses a deadly weapon in such a manner as would ordinarily cause death, and especially where immediately preceded by declarations that he intends to take life—and death ensues—it is a fair inference that he intended to take life.

[Murray *v.* Commonwealth.]

" Apply these principles to the evidence in this case.

" It does not seem to admit of much doubt that James White was shot at the time and place charged, and that he died on the 11th day of September 1874. And if you believe the testimony of the physician, there can be but little doubt that he died from the effects of the wound, and that it was necessarily fatal. Nor is it denied that defendant inflicted the fatal wound. It appears from the testimony on both sides, that on the 24th day of August the defendant and the deceased had a difficulty. The testimony of the Commonwealth is, that on the same evening the defendant made threats, in presence of Mrs. McGuigen, that he would have the life of White. And that a few days afterwards he, to his brother in their room, said he would have the life of White before he left Pittsburg. The brother positively denies that this last threat was made in his presence.

" It seems that the morning of the shooting, Michael Murray and White had a quarrel, at a part of which defendant was present. On the part of the Commonwealth it has been testified that the defendant then made a threat against White. The brother says he heard no such threat. Michael Murray testifies that White had previously made threats against him and his brother Philip, and that he had told Philip of the threat; and you have evidence as to the relative physical power of the defendant and deceased. Next, the Commonwealth has produced testimony of a serious threat made by the defendant at the corner of Fourteenth and Pike streets, half a square from the place of shooting, and a short time before. Witnesses for the defendant testify that they were present at the time and heard no such threats. The witnesses testify that Philip Murray remained after the others left; and that he was there a short time before the shooting. The testimony on both sides shows that Philip Murray had not been employed at this mill for some time before, but was then employed at Shoenberger's mill. So far as appears he had no business at this mill where White was employed. Philip Hurley testifies that a short time before the shooting he saw the defendant walking back and forth past the gate leading into the mill. Soon after—he does not fix the length of time—he heard a shot, looked around and saw White with his hands to his face, and blood spurting from his mouth, and retreating, Murray following ten to twelve feet away, and that Murray fired three or four shots after that. Other witnesses testify to hearing the shot, looking around and seeing White and Murray in about the same position as testified to by Hurley. Michael Brown testifies that he saw Murray entering the gate, going along the track, and in a minute or two he heard a shot; immediately turned round and saw Murray and White eight or ten yards apart, White, turning away, put up his hands and retreating, Murray, pursuing him, shot three or four times.

[Murray v. Commonwealth.]

"On the part of the defendant, Thomas Ryan testifies that he was accidentally at the mill, and although not having spoken to any one in the mill, either before or after, he saw Philip Murray coming in on the track, and the first he saw of White was that he was close to Murray, and struck at him, missing him, then struck again, hit Murray in the breast. That Murray then backed, drew a revolver and shot White, and except as to the distance of the parties apart, he describes the after shooting substantially as the other witnesses. This testimony of Ryan is very important; if this meeting of Murray and White was accidental and not premeditated, it would then become very important for you to determine as to whether or not Murray was excusable in the shooting in the honest belief that it was necessary to protect himself from great bodily injury. But if you find that Murray, in pursuance of a previously formed intention, came there armed with his loaded pistol to provoke a conflict with White, and in pursuit of this intent met White, and the conflict took place, and he then killed White, it is murder; and if he had a specific intent to take life, it is murder in the first degree.

"What conclusions do you draw from the evidence? What facts are proven? If you have a reasonable doubt either as to the guilt or the degree of guilt, the defendant is entitled to the benefit of that doubt. A doubt, to work acquittal, or to reduce the grade of offence, must be serious and substantial, not the mere possibility of a doubt." * * *

The jury found the prisoner "Guilty of murder in the first degree."

The prisoner took a writ of error, and assigned for error:—

1, 2. Allowing the challenges of the jurors by the Commonwealth.

3. Affirming the Commonwealth's first point.

4. Affirming the Commonwealth's second point.

5. Affirming the Commonwealth's third point.

*W. Reardon* and *T. M. Marshall*, for plaintiff in error.

*Gazzam & Cochran*, for Commonwealth, defendant in error, as to the third assignment of error, cited: Wharton's Am. Crim. Law 955; State v. Johnson, 3 Iredell 354; State v. Ferguson, 2 Hill (S. C.) 619; State v. Lane, 4 Iredell 113; State v. Tilley, 3 Id. 424; Stewart v. State, 1 Ohio St. R. 66; Commonwealth v. Mosler, 4 Barr 268; 1 Hale P. C. 457. As to the fifth assignment of error, they cited: 1 Wharton's Crim. Law 1020; United States v. Vigol, 2 Dallas, 346; Lander v. State, 12 Texas 462; People v. McLeod, 1 Hill N. Y. 377; State v. Morgan, 3 Iredell 186.

[Murray *v.* Commonwealth.]

Mr. Justice PAXSON delivered the opinion of the court, November 15th 1875.

It is an unusual practice for the District Attorney to submit points to the court in a capital case. In my own experience I have never known it to be done, nor is it easy to see the object, as the Commonwealth is concluded by the verdict. In this case it has resulted disastrously. The only substantial errors assigned are to the answers of the court to the points submitted for the Commonwealth.

The first and second assignments of error are not sustained. They were not seriously pressed upon the argument, and I may pass them without further comment. But there was error in affirming the Commonwealth's first point. In the case of an antecedent threat and a present provocation, it is for the jury to find whether the killing was in pursuance of the previous threat, or was the result of the immediate provocation. The effect of the affirmance of this point was to throw the burden of proof upon the prisoner. It required him to prove a negative ; that a previously formed purpose no longer existed. As there is no process by which the operation of the mind can be photographed, this was laying a heavy, if not impossible, burden upon the prisoner. Under our statute defining the degrees of murder, the presumption against the accused rises no higher than that the homicide is murder in the second degree : Commonwealth *v.* Drum, 8 P. F. Smith 9. Whenever it is sought to convict of murder in the first degree, the burden of proof is upon the Commonwealth to show the circumstances necessary to raise the offence above murder of the second degree. Nor can this burden be shifted from the Commonwealth upon the shoulders of the defendant. The learned judge was doubtless misled by the text in Wharton's American Criminal Law, page 955, which is substantially in the language of the Commonwealth's point. Many of the text-books, as well as authorities outside of the state, are not to be relied upon by reason of our peculiar division of homicide into murder of the first and second degree. In Commonwealth *v.* Drum, before cited, the present chief justice, who tried the case, refers to these distinctions and the general law of homicide with great accuracy.

In the Commonwealth's second point the same idea is repeated, though in a less objectionable form. It was not perhaps technical error to affirm it, yet unexplained it may not have been understood by the jury. Upon what evidence may the jury find that the prisoner had abandoned his previous purpose to take the life of the deceased ? He cannot prove a negative. The purpose may have been formed years before and long since abandoned. It was therefore a question for the jury, upon all the evidence in the case, to determine whether the prisoner killed the deceased in pursuance of his previously formed design to take his life, or

[Murray v. Commonwealth.]

whether it was the result of a provocation occurring at the time of the killing.

The law of homicide excusable on the ground of self-defence was not correctly stated in the Commonwealth's sixth point, and it was therefore error to affirm it. It is not necessary that a man shall be in actual imminent peril of life, or of great bodily harm, before he may slay his assailant. It is sufficient if in good faith he has a reasonable belief, founded upon the facts as they appear to him at the time, that he is in such imminent peril, even though it should afterwards appear that he was mistaken. The law will not hold a man to absolute correctness of judgment under such trying circumstances.

We do not regard this error as cured by the general charge. An obscure answer may be aided in this manner, but not one that is palpably erroneous. Beside, the general charge upon this branch of the case is not consistent with itself, and may have left the jury in doubt as to what the law really was.

> The judgment of the Oyer and Terminer is reversed; a *venire facias de novo* awarded, and the record remitted to said court for another trial.