## Commonwealth *v.* Light, Appellant.

Argued November 28, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Thomas A. Ehrgood,* with him *Ehrgood and Ehr-good,* for appellant.

*David J. Brightbill,* Assistant District Attorney, with him *George E. Christianson,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE POMEROY, October 16, 1974:

The appellant was convicted by a jury of voluntary manslaughter and assault with intent to kill.[1] Following the denial of his motion for a new trial, he was sentenced on the manslaughter conviction to imprisonment for a term of two years to four years and eleven months, and on the assault conviction to imprisonment for a term of one and a half to three years, the sentences to run concurrently. He has now appealed those judgments to this Court.[2] We affirm.

The facts in this case are almost undisputed. The appellant lived on a farm in Annville, Lebanon County, with his brother, Ronald Light. On the night of October 2, 1972, at approximately nine o'clock, while the appellant was walking outside his home, a car drove up containing three persons, Rebecca Rudy, Dennis Morgan and Richard Garrison. Although he was not acquainted with the Rudy girl, Light knew both Morgan and Garrison. Garrison had gone to school with Light's brother and Morgan had worked with Light at

---

[1] The indictment was for the murder of one Dennis Morgan and for assault with intent to kill on one Richard Garrison.

[2] This Court has jurisdiction of the appeal of the judgment of sentence imposed for the voluntary manslaughter conviction on direct appeal because it is a felonious homicide. Act of July 31, 1970, P.L. 673, No. 223, art. II, §202, 17 P.S. §211.202(1). As to the appeal of the judgment of sentence on the assault with intent to kill conviction, the appellant quite properly filed an appeal with the Superior Court. That court then certified the appeal to this Court in order that we might hear both appeals contemporaneously, since they involve the same factual situation.

a shoe factory in Lebanon County. The three had been driving around town and drinking beer before they arrived at Light's place. They asked Light if his brother was home. Upon being told that he was not, they asked permission for the girl to use the bathroom inside. Light agreed.

Once inside, the group, including Light, sat around the kitchen drinking beer, while Morgan made five or six crank telephone calls. The Rudy girl and Garrison then went into the living room and the defendant left to get more beer, apparently at the request of Morgan. During Light's absence, Morgan went upstairs and several minutes later called Garrison to join him. While upstairs, according to Garrison, Morgan asked him "what kind of girl" Rebecca Rudy was.

Appellant testified that when he arrived back at his home with the beer, he noticed that there were lights on in an upstairs bedroom, where, according to him, there hadn't been any when he had left. He proceeded to take the gun which he kept on the floor of the car and went inside. He went through the kitchen and into the living room. At this same time, Morgan and Garrison were running down the stairs, with Garrison in the lead. When Garrison reached the landing at the foot of the stairs, Light pointed the gun at him and fired twice, wounding him in the chest. The defendant then fired seven shots at Morgan, killing him. Immediately afterwards, Light went into the kitchen, put down his gun, and with the aid of Miss Rudy, called the police. The Rudy girl, while present throughout, apparently was napping in the living room and did not awaken until she heard gunfire.

Appellant raises three grounds which he asserts require the granting of a new trial.

First, he maintains that the two verdicts were against the weight of the evidence. We find no merit in

this contention. There was ample evidence to support the verdicts, even from the defendant's own testimony.

Second, appellant contends that the trial court committed error in its charge by emphasizing that appellant was acting in the heat of passion when he fired at the two men. He alleges that, as a result of the judge's charge, the jury had no choice but to return a verdict of voluntary manslaughter. We need not pass on the merits of this argument. Following the conclusion of the charge, defense counsel took only a general exception to the charge. Failure to take a specific exception to the language complained of forecloses review by this Court. *Vanic v. Ragni,* 435 Pa. 26, 32, 254 A.2d 618 (1969). Although it is urged that the alleged error in the charge was "basic and fundamental", see, e.g., *Commonwealth v. Jennings,* 442 Pa. 18, 24-26, 274 A.2d 767 (1971), recently this Court has apparently discarded that exception to the general rule that an appellate court will not reverse on a point where no exception or only a general exception was taken to the charge, or on a ground not raised in or by the court below. *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974); *Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A.2d 114 (1974).[3] It is therefore, unnecessary for us to address ourselves to the question of whether the error, if such it was, was of the sort to qualify under the "basic and fundamental" approach.

The third ground urged in support of a new trial demands more extended consideration. Appellant contends that the trial court erred in excluding the testimony of a psychiatrist as to whether the defendant believed that he was acting in self-defense when he shot

---

[3] The writer of this opinion and Mr. Justice EAGEN dissented to this portion of the decision in *Dilliplaine,* 457 Pa. at 255 and to the application, now made explicit, of *Dilliplaine* to criminal cases in *Clair.*

the two victims. Defense counsel first indicated his intention to call the psychiatrist, Dr. Muhlfelder, at a pre-trial conference. Counsel then stated, *inter alia,* that the testimony was being offered in support of the defense of self-defense since the psychiatrist would testify that the defendant was operating "under a *bona fide* and reasonable belief" that a felony was being committed by the victims. The judge rejected the offer of proof because it did not come within the M'Naghten Rule. At trial, the defendant twice renewed the offer, again pointing out that the psychiatrist would testify that "Light assumed he was acting in self-defense". Both times the offer was rejected by the trial judge. We have concluded that the exclusion of the psychiatrist's testimony insofar as it pertained to appellant's subjective belief was error, but, because of the unique circumstances of this case, not such error as demands reversal.

It has long been the law in Pennsylvania that in order to establish the defense of self-defense, three essential elements must be proved by the defendant by a preponderance of the evidence: "(1) The slayer must have been free from fault in provoking or continuing the difficulty which resulted in the killing . . . . (2) The slayer must have *reasonably believed* that he was in imminent danger of death, great bodily harm, or some felony, and that there was a necessity to kill in order to save himself therefrom . . . . (3) The slayer must not have violated any duty to retreat or avoid the danger . . . ." *Commonwealth v. Roundtree,* 440 Pa. 199, 204, 269 A.2d 709, 712 (1970) (citations omitted) (emphasis added); accord *Commonwealth v. Carbonetto,* 455 Pa. 93, 97, 314 A.2d 304 (1974) ; *Commonwealth v. Zapata,* 447 Pa. 322, 326, 290 A.2d 114, 116-17 (1972) ; *Commonwealth v. Edwards,* 448 Pa. 79, 83, 292 A.2d 361, 363 (1972) ; *Commonwealth v. Johnston,* 438 Pa. 485, 489, 263 A.2d 376, 379 (1970). It was relative to

the second element of the defense that the offer of proof was made.

It will be noted that the requirement that the defendant be operating under the reasonable belief that he is in imminent danger of death, great bodily harm or some felony, involves two elements. First, the defendant in fact must have acted out of an honest, bona fide belief that he was in imminent danger. Second, the belief must be reasonable in light of the facts as they appeared to him. *Murray v. Commonwealth,* 79 Pa. 311, 317 (1875). The first element is entirely subjective; the second, clearly objective.[4] In light of what this Court has recently said in *Commonwealth v. Jones,* 459 Pa. 62, 327 A.2d 10 (1974) and *Commonwealth v. McCusker,* 448 Pa. 382, 292 A.2d 286 (1972), we believe that psychiatric testimony should be admissible as to the first element, *i.e.,* the subjective element of the defendant's state of mind at the time of the occurrence. As stated below, it is not relevant as to the objective factor of reasonableness of the defendant's belief.

Our holding in *Jones* was that psychiatric testimony concerning a defendant's mental capacity and condition at the time he purportedly made a confession is admissible on the question of his ability to give such a statement. Following the principles approved in *McCusker,* we stated that "[t]he state of mind of a defendant at the time of giving a confession can plainly be brought into question at trial and *the defendant should be able to introduce any evidence—lay or psychiatric—which is relevant to that issue.*" (Emphasis supplied.) 459 Pa. 67. This basic approach is equally applicable to the case at bar. Any result to the contrary would, moreover, be logically inconsistent with our *McCusker* deci-

_____

[4] The requirements for the defense of self-defense are now incorporated in the new Crimes Code. *See* Act of December 6, 1972, P.L. 1482, No. 334, §1, 18 Pa.C.S. §§501, 505 (1973).

sion.  In *McCusker*, we held psychiatric evidence to be admissible on the question whether a defendant was acting in the heat of passion at the time he committed a killing.  Affirmative testimony in this respect, if believed by the factfinder, would probably serve to reduce the degree of the defendant's culpability from murder to voluntary manslaughter.  In the instant case, the psychiatric evidence would be relevant to the question of whether a homicide, otherwise unjustified, can be said to have been justifiable because of the defendant's fear for his life.

The admission of psychiatric evidence in a case such as this is not a totally new departure in Pennsylvania. In the case of *Commonwealth v. Jordan*, 407 Pa. 575, 181 A.2d 310 (1962), the trial court had admitted psychiatric testimony where the defendant's defense, as here, was self-defense. The psychiatrist was permitted to testify "that at the time of the shooting the defendant suffered from an intense fear psychosis, which made it possible for him to do something irrational and not to be aware of what he was doing". 407 Pa. at 581. While the propriety of this testimony was not directly questioned, nowhere in this Court's opinion did we intimate that such testimony should have been excluded. Similarly, in *Commonwealth v. Carroll*, 412 Pa. 525, 194 A.2d 911 (1963), psychiatric evidence was admitted on the issue whether a killing was premeditated. Our opinion merely observed that such testimony was " entitled to very little weight"; we did not say that it should have been excluded. Long ago, this Court spoke of "the legal and *psychological* distinctions between justifiable homicide and voluntary manslaughter", *Commonwealth v. Principatti*, 260 Pa. 587, 596, 104 A. 53 (1918) (emphasis added). Since we have recognized the existence of "psychological" differences between the two, it is only logical that we should admit all testimony which in a given case

serves to illuminate those differences. Cf. *Commonwealth v. McCusker, supra* at 388, 292 A.2d at 286, 289; *Commonwealth v. Jones, supra* at 67-68.[5]

Our inquiry, however, does not end here, for the fact that the proffered evidence should have been admitted does not, by itself, demand reversal. As indicated above, the question of whether a defendant claiming the defense of self-defense entertained a reasonable belief of an imminent serious danger to himself involves two aspects, one objective and the other subjective. While the psychiatric evidence here tendered was admissible on the question whether the appellant subjectively entertained the belief, it would be of no help in determining whether that belief was reasonable in light of all the circumstances. After a careful review of the record, we have concluded that the appellant's belief, real to him though it may have been, was not reasonable.

Several times during his testimony at trial, the appellant stated that he shot the two men "[b]ecause I thought they were going to get me". When asked why he thought they were going to get him, he replied, "[w]hy, I caught them stealing". But there was at trial no evidence that the two victims had *actually* committed a larceny or that they had any intention of attacking the defendant. The necessity to kill to protect oneself, however, does not have to be an actuality; it is enough that it be reasonably apparent in light of all the circumstances.[6] The question in this case is thus whether such a reasonably apparent necessity to kill was present. Our review of the evidence satisfies us that it was not.

---

[5] *See also* P.L.E., Homicide, ch. 5, §76 at 497, wherein it is said "[w]here the accused claims that he acted in self-defense, evidence showing any facts legitimately tending to bear out this theory is admissible".

[6] *Murray v. Commonwealth*, 79 Pa. 311, 317 (1875).

Garrison, the victim who survived, testified that immediately before the shooting, when he had come down the stairs and been confronted by Light, his only communication with Light was to ask "if he got the beer". It is obvious that there is nothing particularly threatening about such a remark, yet appellant responded by firing his gun. The appellant himself testified that at the time of the shooting, he had observed that the victims had nothing in their hands. There is simply no evidence of anything menacing in the conduct of either Garrison or Morgan immediately prior to the assault upon them.

The defendant's defense of self-defense was based largely upon incidents which had occurred at earlier times. These included a fight which he had had with Morgan when the two of them were employed together at the shoe factory. At that time, Morgan is alleged to have said that he would "get" Light. While this incident might tend to indicate that Light had something to fear from Morgan, its probative value is weakened because the incident took place in 1968, four years before the shooting. Light also testified to another fighting incident in which Morgan's brother was peripherally involved. Whatever value this incident may have had in building appellant's defense was, like the other incident, weakened by the fact that it had taken place several years before, in 1969.

In support of his contention that he felt a felony, namely a burglary (or larceny), was being committed upstairs when he returned home with the beer, defendant testified to three other burglaries which had taken place in his home during the previous four years. Although there was testimony by one Barry Wagner which may have linked Garrison to one of the burglaries, there is nothing in the record to indicate that Light was aware of any involvement by Garrison, if such there was.

It is upon these fragile reeds that appellant sought to rest his claim of self-defense. The question is, considering this evidence, whether a reasonable man would have entertained a belief that he was in danger of imminent death, great bodily harm, or a felony, and that there was a necessity for him to kill when confronted by two acquaintances whom he had invited into his home, coming down the stairway of his home, each apparently unarmed. The jury was manifestly justified in concluding, as it did, that a reasonable man would not have had such a belief. Appellant's own testimony tended to discredit his contention that his actions were reasonable: he testified that the only things of value that he had upstairs on the night of the shooting were a silver dollar, a set of Corning ware and two place settings of silverware. It is not reasonable to suppose that the defense of such property requires a killing. The admission of psychiatric evidence as to the defendant's state of mind, as to what his belief was at the time, could not have supplied the missing element of reasonableness.

We thus have a situation in which the defendant entertained an *un*reasonable belief that he was in imminent serious danger. In such cases, we have said that the killing is not excusable, but is manslaughter. *Commonwealth v. Miller*, 313 Pa. 567, 569, 170 A. 128 (1934); *Commonwealth v. Pride*, 450 Pa. 557, 559, 301 A.2d 582, 583 (1973). In *Commonwealth v. Principatti, supra*, we emphasized that: " 'The dividing line between self-defense and this character of manslaughter [voluntary, brought about through the influence of a passion or fear] seems to be the existence, as the moving force, of a reasonably founded belief of either imminent peril to life or great bodily harm, as distinguished from the influence of an uncontrollable fear or terror, conceivable as existing but not reasonably justified by the circumstances' ". 260 Pa. at 596, quoting *Common-*

*wealth v. Colandro,* 231 Pa. 343, 80 A. 571 (1911). In the case before us, it is the latter sort of fear which seems to have been operative.

In sum, the mere fact that the exclusion of the psychiatric testimony was error does not require reversal since we are convinced that even if the evidence had been admitted, it would have been insufficient to require a different verdict. The error, therefore, was harmless.[7] It follows that the judgments of sentence on both the voluntary manslaughter conviction and the assault with intent to kill conviction must be affirmed.[8]

It is so ordered.

Mr. Justice EAGEN and Mr. Justice O'BRIEN concur in the result.

---

[7] Since a constitutional issue is not involved, we need not determine that the error is harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18 (1967).

[8] Self-defense is, of course, available as a defense to a charge of assault with intent to kill. The elements of the defense are the same as they are for a defense to a homicide charge. *Commonwealth v. Mitchell,* 181 Pa. Superior Ct. 225, 124 A.2d 407 (1956). Therefore, having failed to demonstrate the reasonableness of his belief, defendant was properly convicted of this offense as well as voluntary manslaughter.

---

DISSENTING OPINION BY MR. JUSTICE MANDERINO:

I agree with the opinion of the Court that it was error for the trial judge to exclude the psychiatrist's testimony. However, I cannot agree that such error was harmless. I therefore dissent.

Mr. Justice POMEROY's opinion notes that to sustain a defense of self-defense, the defendant must prove that the slayer *"reasonably believed* that he was in imminent danger of death, great bodily harm, or some felony ...." (Emphasis in the court's opinion.) This language paraphrases *Murray v. Commonwealth,* 79 Pa. 311, 317 (1875), where our Court said: "It is not necessary that a man shall be in actual imminent peril of life, or great

bodily harm, before he may slay his assailant. It is sufficient if in good faith he has a reasonable belief, founded upon the facts *as they appeared to him at the time,* that he is in such imminent peril, even though it should afterwards appear that he was mistaken." (Emphasis added.)

Mr. Justice POMEROY's opinion points out that a two part test is involved: (1) "the defendant in fact must have acted out of an honest, bona fide belief that he was in imminent danger," and (2) "the belief must be reasonable in light of the facts *as they appear to him.*" (Emphasis added.) Mr. Justice POMEROY's opinion then labels the first part of the test as "entirely subjective," and the second part as "clearly objective." Having labeled the second part of the test as "clearly objective," it is easy to conclude that any testimony to be given by a psychiatrist would be irrelevant (and therefore harmless error if excluded) as to the objective question of whether defendant's belief was reasonable. As the opinion states: "it would be of no help in determining whether that belief was reasonable in light of all the circumstances."

The error in this logic lies in the label. Far from being "clearly objective," the second part of the test involves *both* objective and subjective considerations. To determine the reasonableness of defendant's belief that he was in imminent danger of death or serious bodily harm, the jury must consider all the circumstances *as perceived by the defendant.* The question of the defendant's perception of the circumstances immediately preceding the killing is subjective, and psychiatric testimony as to the defendant's state of mind at the time is clearly relevant. It is easy to imagine situations where two different people could, because of differences in their subjective states of mind, "reasonably" react in totally different ways to the same stimulus. For example, one who, confronted on a sidewalk by a growling

dog, reacts in terror because of a subjective fear of animals, is no less reasonable (based on the facts *as he perceives them*) in his belief that the dog is about to attack than another who, because of years of training as a veterinarian and experience in handling dogs, sees that (based on the facts *as he perceives them*) there is no danger.

It is for the jury to decide whether the defendant's belief was reasonable. Such a determination must be based on the facts and circumstances *as the defendant perceived them*. This they were unable to do because psychiatric testimony concerning the defendant's state of mind and its effect on his perception of the facts and circumstances that immediately preceded the shooting was withheld from the jury.

Such error was not harmless. Whether an error is of constitutional dimensions or not, the only proper test for determining whether the error is harmless should be the test announced in *Chapman v. California*, 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967). We certainly cannot say that the error in the instant case was harmless beyond a reasonable doubt. Furthermore, even if we apply, *arguendo*, the test used by the Court in its opinion here, we cannot say that the jury would have reached the same conclusion had they been given the benefit of testimony as to the defendant's subjective perception of the facts and circumstances leading up to the shooting.

I would therefore reverse and remand for a new trial consistent with this opinion.

Mr. Justice ROBERTS and Mr. Justice NIX join in this dissenting opinion.