J-A04007-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JOHN E. TORRES | |
| Appellant | No. 1964 MDA 2016 |

Appeal from the Judgment of Sentence imposed November 29, 2016
In the Court of Common Pleas of York County
Criminal Division at No: CP-67-CR-0003515-2014

BEFORE: STABILE, NICHOLS, AND RANSOM,[*] JJ.

MEMORANDUM BY STABILE, J:                    **FILED MAY 31, 2018**

Appellant, John E. Torres, appeals from the judgment of sentence imposed on November 29, 2016 in the Court of Common Pleas of York County following Appellant's conviction of aggravated assault, 18 Pa.C.S.A. § 2702(a)(1). Appellant challenges the sufficiency of the evidence as well as evidentiary rulings, and claims a violation of due process. Following review, we affirm.

In its Rule 1925(a) opinion, the trial court provided the following factual and procedural history:

> [Appellant] was charged with the following offenses: (1) Aggravated Assault; and (2) Criminal Attempt to Murder in the

_____

[*] Retired Senior Judge assigned to the Superior Court.

First Degree. The incident giving rise to these charges [was] alleged as follows.

On April 29, 2014, the York Area Regional Police Department received a dispatch concerning an individual shot multiple [times] in the parking lot of 333 Brentwood [D]rive, an apartment complex where [Appellant] lived. [Appellant] called the police stating that he was an off-duty Baltimore Police Officer and had shot David Hohman (herein, "victim"). Upon the officers' arrival, the officers observed the victim shot multiple times inside his silver Nissan Altima.

[Appellant's] vehicle was parked in the fire lane adjacent to the apartment complex with the victim's vehicle positioned behind and up against it. The officers found fourteen (14) shell casings surrounding the victim's vehicle and in the immediate area. The victim had been shot more than six (6) times. Upon further examination, it was determined that [Appellant's] Glock service weapon had been emptied.

The victim believed that [Appellant] and victim's wife were having an affair[1] and had gone to [Appellant's] home to confront [Appellant's] wife. [Appellant] told police that he was fearful for his life when he saw the victim pull his car up behind his because [Appellant] had received a text message earlier in the day from a co-worker advising him that the victim was outside [Appellant's] apartment complex. [Appellant] observed the victim's car as he was leaving his apartment for work and immediately drew his firearm and began shooting at the victim. [Appellant] denied seeing the victim with a weapon, and no weapon was found on the victim's person or in his car.[2]

---

[1] Appellant had previously worked as a security officer at a Baltimore grocery store where both the victim and his wife were employed.

[2] Appellant stated that the moment he saw Hohman make a move with his hand, he began firing because he believed Hohman had a shotgun and was "crazy." Appellant's belief was based on what he considered a murder-suicide threat by Hohman against Hohman's wife that occurred on February 3, almost three months before Appellant shot Hohman. Hohman and his wife both testified about that incident and stated that Hohman did not threaten her or himself but the police were called, Hohman's shotgun was confiscated, and

After the York Area Regional Police arrived on the scene, the victim was transported to York [H]ospital where he was treated for gunshot wounds to his upper arm and torso. Shortly after, [Appellant] was taken into custody and charged with the above listed offenses.

On September 23, 2016, at the conclusion of the trial, a jury unanimously found [Appellant] guilty of Aggravated Assault. On November 29, 2016, [Appellant] was sentenced to a term of five (5) to ten (10) years' incarceration.

Trial Court Opinion, 5/25/17, at 2-3.

Appellant filed a timely notice of appeal. Appellant and the trial court complied with Pa.R.A.P. 1925. Appellant now asks this Court to consider five issues on appeal:

**Issue #1:** The Commonwealth presented insufficient evidence to convict Appellant of Aggravated Assault. Even taking the evidence in the light most favorable to the verdict winner, the Commonwealth failed to rebut the defense testimony beyond reasonable [*sic*] that Appellant was free from fault in provoking or continuing the difficulty which resulted in the use of deadly force, (2) he reasonably believed he was in imminent danger of death or seriously bodily injury from the victim's oncoming vehicle and that victim was armed with a shotgun, (3) there was necessity to use such force in order to save himself, and (4) he could not retreat with complete safety.

**Issue[] #2:** The trial court erred when it granted the Commonwealth's motion in limine to limit certain aspects of the testimony of [Appellant's] expert, Emmanuel Kapelsohn. The limited aspects of the testimony included, but are not limited to:

---

Hohman voluntarily committed himself for three days. Although Hohman received notice that he could pursue retrieval of the shotgun, he had not done so. Appellant testified that Hohman's wife said the gun had been returned to Hohman. Hohman's wife denied making that statement. ***See*** Notes of Testimony, Trial, 9/20/16, at 236-38, 326-28, 575-85.

standard police training of approaching a perceived threat while continuing to fire a service weapon, "action v. reaction" demonstration, physical and perceptual changes during life-threatening events, and effects of police training and experience in dealing with individual with mental health issues, such as suicide attempts. The trial court's decision is based on a misreading of **Commonwealth v. Light**, 326 A.2d 288 (Pa. 1974), which does **not** limit state of mind testimony solely to psychiatric testimony and does not hold that testimony about a defendant's subjective state of mind is impermissible.

**Issue #3:** The trial court erred in limiting aspects of defense expert, Emmanuel Kapelsohn's testimony, regarding physical and perceptual changes during life-threatening events by narrowly reading Pa.R.E. 702 to require psychiatric testimony when the rule permits expert testimony by "knowledge, skill, experience, training, or education." Mr. Kapelsohn had such a combination of qualifications as to permit him to testify regarding those aspects of his report the trial court deemed "psychiatric" in nature.

**Issue #4:** The trial court erred when it sustained the Commonwealth's objection to the testimony of Joseph Key, the training supervisor of Baltimore City Police Department, when his testimony was relevant, was more probative than prejudicial, and assisted the jury in understanding the intricate and complex training Baltimore City Police Officers, such as Appellant, receive including but not limited to use of lethal force, perception of threats, understanding of action v. reaction, understanding of body-alarm reaction, reflexive nature of police training, and advancing, but not retreating, against perceived threats. This testimony was relevant to place the jury "in the shoes" of Appellant when he made the decision to draw his service pistol and fire it at the victim in an oncoming vehicle.

**Issue #5:** The trial court's limitations imposed on Appellant's witnesses, both in excluding the testimony in its entirety of fact witness, Joseph Key and substantially limiting the testimony of expert, Emmanuel Kapelsohn, violated Appellant's due process rights under the 6th and 14th Amendments to the U.S. Constitution and Article I, Section 9 of the Pennsylvania Constitution by interfering in Appellant's ability to present his justification defense.

- 4 -

Appellant's Brief at 7-9 (footnote omitted) (emphasis in original) and

Appellant's Amended Statement of Errors Complained Pursuant to Pa.R.A.P.

1925(b), 5/25/17, at 2-3 (unnumbered).[3]

In his first issue, Appellant challenges the sufficiency of evidence, not in

terms of the evidence proving the elements of aggravated assault, but rather

in terms of the Commonwealth's evidence rebutting Appellant's claims of

justification or self-defense. In **Commonwealth v. Smith**, 97 A.3d 782 (Pa.

Super. 2014), we noted that this Court's standard of review of a sufficiency of

evidence claim is

> whether viewing all the evidence admitted at trial in the light most
> favorable to the verdict winner, there is sufficient evidence to
> enable the fact-finder to find every element of the crime beyond
> a reasonable doubt. In applying the above test, we may not weigh
> the evidence and substitute our judgment for the fact-finder. In
> addition, we note that the facts and circumstances established by
> the Commonwealth need not preclude every possibility of
> innocence. Any doubts regarding a defendant's guilt may be
> resolved by the fact-finder unless the evidence is so weak and
> inconclusive that as a matter of law no probability of fact may be
> drawn from the combined circumstances. The Commonwealth
> may sustain its burden of proving every element of the crime
> beyond a reasonable doubt by means of wholly circumstantial
> evidence. Moreover, in applying the above test, the entire record

_____

[3] Although it appears that Appellant inadvertently neglected to include Issue #5 in his Statement of "Questions Involved," we have included it here because his Rule 1925(b) statement does list the issue, Appellant included it in both his Table of Contents and Argument (**see** Appellant's Brief at vi and 88-100), and the Commonwealth does not suggest Appellant has waived the issue, as evidenced by the fact the Commonwealth responded to the issue (**see** Commonwealth's Brief at 55-57). Therefore, we shall address Appellant's fifth issue despite the language of Pa.R.A.P. 2116(a) that directs that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."

must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Id.* at 790 (brackets omitted) (quoting ***Commonwealth v. Barnswell Jones***, 874 A.2d 108, 120-21 (Pa. Super. 2005) (additional citation omitted)).

Again, Appellant was charged with aggravated assault and attempted first-degree murder. The jury acquitted him on the attempted murder charge but found him guilty of aggravated assault. As explained in the Crimes Code, "A person is guilty of aggravated assault if he [] attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" 18 Pa.C.S.A. § 2702(a)(1).

In his brief, Appellant acknowledges that he "in essence had to concede the crime[] by raising the justification." Appellant's Brief at 40. Therefore, we shall focus, as does Appellant, on whether the Commonwealth established sufficient evidence, beyond a reasonable doubt, to rebut Appellant's justification defense. With regard to the defense, Section 505 of the Crimes Code provides, in relevant part:

**Use of force in self-protection**

**(a) Use of force justifiable for protection of the person.—** The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

**(b) Limitations on justifying necessity for use of force.—**

* * *

(2) The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat; nor is it justifiable if:

(i) the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or

(ii) the actor knows that he can avoid the necessity of using such force with complete safety by retreating[.]

* * *

(2.3) An actor who is not engaged in a criminal activity, who is not in illegal possession of a firearm and who is attacked in any place where the actor would have a duty to retreat under paragraph (2)(ii) has no duty to retreat and has the right to stand his ground and use force, including deadly force, if:

(i) the actor has a right to be in the place where he was attacked;

(ii) the actor believes it is immediately necessary to do so to protect himself against death, serious bodily injury, kidnapping or sexual intercourse by force or threat; and

(iii) the person against whom the force is used displays or otherwise uses:

(A) a firearm or replica of a firearm as defined in 42 Pa.C.S.A. § 9712 (relating to sentences for offenses committed with firearms); or

(B) any other weapon readily or apparently capable of lethal use.

18 Pa.C.S.A. § 505(a)-(2).

In **Smith**, this Court explained:

If the defendant properly raises "self-defense under Section 505 of the Pennsylvania Crimes Code, the burden is on the Commonwealth to prove beyond a reasonable doubt that the defendant's act was not justifiable self-defense." *Commonwealth v. McClendon*, 874 A.2d 1223, 1229–30 (Pa. Super. 2005).

> The Commonwealth sustains this burden if it establishes at least one of the following: 1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; or 2) the accused provoked or continued the use of force; or 3) the accused had a duty to retreat and the retreat was possible with complete safety.

*Commonwealth v. Hammond*, 953 A.2d 544, 559 (Pa. Super. 2008), *appeal denied,* 600 Pa. 743, 964 A.2d 894 (2009) (quoting *McClendon*, supra at 1230). The Commonwealth must establish only one of these three elements beyond a reasonable doubt to insulate its case from a self-defense challenge to the evidence. *Commonwealth v. Burns*, 765 A.2d 1144, 1149 (Pa. Super. 2000), *appeal denied,* 566 Pa. 657, 782 A.2d 542 (2001). The Commonwealth can negate a self-defense claim if it proves the defendant did not reasonably believe he was in imminent danger of death or great bodily injury and it was necessary to use deadly force to save himself from that danger. *Commonwealth v. Sepulveda*, 618 Pa. 262, 288–89, 55 A.3d 1108, 1124 (2012).

> The requirement of reasonable belief encompasses two aspects, one subjective and one objective. First, the defendant must have acted out of an honest, bona fide belief that he was in imminent danger, which involves consideration of the defendant's subjective state of mind. Second, the defendant's belief that he needed to defend himself with deadly force, if it existed, must be reasonable in light of the facts as they appeared to the defendant, a consideration that involves an objective analysis.

*Commonwealth v. Mouzon*, 617 Pa. 527, 551, 53 A.3d 738, 752 (2012). As the *Mouzon* Court observed, the use of deadly force itself "cannot be viewed in isolation with [the victim] as the sole physical aggressor and [the defendant] acting in responsive self-defense. [T]his would be an incomplete and inaccurate view of the circumstances for self-defense purposes." *Id.* at 549, 53 A.3d at 751. To claim self-defense, the defendant must be free from

- 8 -

fault in provoking or escalating the altercation that led to the offense, before the defendant can be excused from using deadly force. **_Id._** (emphasis added). Likewise, the Commonwealth can negate a self-defense claim by proving the defendant "used more force than reasonably necessary to protect against death or serious bodily injury." **_Commonwealth v. Truong_**, 36 A.3d 592, 599 (Pa. Super. 2012) (*en banc*).

**_Id._** at 787-88.

At the conclusion of trial, the trial court instructed the jury on the elements of aggravated assault and attempted murder, followed by instructions on justification. N.T. Trial, 9/23/16, at 785-792. The jury then conducted its deliberations and returned a guilty verdict on aggravated assault only. As the trial court explained in its Rule 1925(a) opinion:

> At trial, [Appellant] admitted he used his Glock handgun to shoot at the victim repeatedly in order to "stop the threat." The crux of his argument revolves around the theory of justifiable self-defense as [Appellant] testified that he believe David Hohman was there to kill him.
>
> Pennsylvania law has long required that when asserting a theory of self-defense, the defendant must show that he was: (1) free from fault in provoking or continuing the incident which results in the killing; (2) must have reasonably believed that he was in imminent danger of death of great bodily harm, and such force was necessary in order to save himself therefrom; and, (3) the defendant did not violate any duty to retreat or to avoid the danger. **_Commonwealth v. Samuel_**, 590 A.2d 1245, 1247-48 (Pa. 1991), 18 Pa.C.S. § 505. Once raised, the Commonwealth bears the burden to disprove the defense beyond a reasonable doubt. **_Commonwealth v. Bullock_**, 948 A.2d 818, 824 (Pa. Super. [] 2008).
>
> In spite of [Appellant's] belief, this court finds the Commonwealth presented sufficient evidence to disprove a theory of self-defense. Notably, evidence was established by the Commonwealth that [Appellant's] belief was unreasonable and the force used

exceeded the force necessary to protect [Appellant] against serious bodily harm.

The evidence offered at trial illustrated that the volume of shots fired and the intended aim of the shots inflicted on the victim were above and beyond self-defense. [Appellant] testified that he was aiming to kill Mr. Hohman. However, [Appellant] was not in danger of death or serious bodily injury at the hands of Mr. Hohman. Mr. Hohman was not armed and did not carry a weapon which could have killed of inflicted serious bodily injury to [Appellant] and Mr. Hohman was traveling at a slow rate of speed in his vehicle when [Appellant] opened fire. [Appellant] had prior knowledge that Mr. Hohman intended to confront [Appellant] and/or [Appellant's] wife on the day of the alleged incident, and it was not established that the confrontation carried a risk of death or serious bodily injury to [Appellant] that [Appellant] would be justified in using deadly force upon seeing the victim's vehicle. While [Appellant's] belief may have been real to him, it was not reasonable and therefore the use of force used by [Appellant] was not justified. Accordingly, this court finds the Commonwealth presented sufficient evidence to establish beyond a reasonable doubt that [Appellant] did not act in self-defense when he shot David Hohman.

Trial Court Opinion, 6/22/17, at 17-18 (some capitalization omitted). We agree. Viewing all the evidence in the light most favorable to the Commonwealth as verdict winner, we conclude there was sufficient evidence to enable the jury to find every element of aggravated assault beyond a reasonable doubt and to find that the Commonwealth disproved the justification defense beyond a reasonable doubt. Therefore, Appellant's sufficiency claim fails.

Appellant's second, third and fourth issues raise evidentiary challenges. In **Commonwealth v. Nypaver**, 69 A.3d 708 (Pa. 2013), this Court explained:

- 10 -

[O]ur standard of review regarding the trial court's evidentiary rulings is deferential. **Commonwealth v. Hernandez**, 39 A.3d 406 (Pa. Super. 2012). Accordingly,

> The admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

**Id.** at 411 (quoting **Commonwealth v. Herb**, 852 A.2d 356, 363 (Pa. Super. 2004)).

**Id.**, 69 A.3d at 716.

In his second issue, Appellant claims trial court error for limiting certain aspects of testimony from Appellant's expert, Emmanuel Kapelsohn, a professional firearms and tactics instructor. Essentially, Appellant argues that while Kapelsohn was permitted to testify as to shotgun timing testing, capabilities of a shotgun vis-à-vis one's ability to retreat, the examination of the handgun, and the handgun's rate of fire, the trial court improperly precluded him from offering testimony regarding Appellant's state of mind. Appellant asserts that the trial court reached its conclusion based on a misreading of **Commonwealth v. Light**, 326 A.2d 288 (Pa. 1974). Appellant contends that **Light** "clearly states 'psychiatric testimony should be admissible as to . . . the subjective element of the defendant's state of mind at the time of the occurrence.'" Appellant's Brief at 27 (quoting **Light**, 326 A.2d at 332).

The trial court explained its limitation of Kapelsohn's testimony, stating:

> This court does not argue [Appellant's] interpretation of **Light**, but does disagree with [Appellant's] conclusion on why this court granted, in part, the Commonwealth's [motion in limine]. This court did not limit Mr. Kapelsohn's testimony because he was not a psychiatrist, but because he was not qualified as an expert to render an opinion on [Appellant's] purposed psychological response to stress.

Trial Court Opinion, 6/22/17, at 6-7 (some capitalization omitted). The court then considered the text of Pa.R.E. 702, relating to expert testimony, as well as Kapelsohn's education, training, background and experience, and concluded:

> Upon thorough review of Mr. Kapelsohn's expert report, this court finds that he appears qualified to testify in the area of firearms and crime scene reconstruction involving firearms. However, there is no indication from Mr. Kapelsohn's report that he possesses any knowledge, skill, experience, training, or education to afford him "specialized knowledge" on the subject of a trained police officer's physiological response to a perceived stress of life-threatening event. As such, this court found that Mr. Kapelsohn was prohibited from being qualified as an expert witness regarding physical and perceptual changes during life-threatening events. Accordingly, we find [Appellant's] claim holds no merit.

**Id.** at 9 (some capitalization omitted).

We find no abuse of discretion in the trial court's determination. Appellant is not entitled to relief.

Appellant's third issue also challenges the trial court's limitations on testimony presented by Kapelsohn. Specifically, Appellant contends the trial court erred in finding Kapelsohn was not qualified to testify as to physical and perceptual changes during life-threatening events.

The trial court rejected Appellant's assertions, repeating its conclusion that Kapelsohn "did not possess the 'specialized knowledge' that would qualify him to be able to offer testimony on such topics." *Id.* at 9. The court explained:

> This court did not limit Mr. Kapelsohn's testimony because he was not a psychiatrist, or because we narrowly read and applied Pa.R.E. 702, but because Mr. Kapelsohn failed to present any training, education or experience that would qualify him as an expert to render an opinion regarding physical and perceptual changes during life-threatening events. This court found that such an opinion was well beyond the scope of Mr. Kapelsohn's expertise as a firearms and crime scene reconstruction expert and thus granted, in part, the Commonwealth's motion.

*Id.* at 10 (some capitalization omitted). As with the previous issue regarding Kapelsohn's qualifications, we find no abuse of discretion in the trial court's determination that "physical and perceptual changes" was beyond the scope of Kapelsohn's expertise as a firearms and crime scene reconstruction expert. Appellant's third issue fails.

In his fourth issue, Appellant argues that the trial court erred in sustaining the Commonwealth's objection to the testimony of Joseph Key, a retired training supervisor with the Baltimore City Police Department. Appellant contents that Key, who was not identified as an expert witness for the defense, would have offered testimony that was more probative than prejudicial regarding the training provided to members of the Baltimore police force, including the use of lethal force, perception of threats, understanding

"action vs. reaction," and the reflexive nature of advancing rather than retreating.

Before ruling on the admissibility of Key's testimony, the trial court conducted a closed hearing. Based on Key's testimony in that proceeding, the trial court determined that Key did not provide any training to Appellant and was not employed by the police department when Appellant was trained. Therefore, Key would have little or no knowledge of the training Appellant actually received or whether Appellant received the training that Key intended to describe. Trial Court Opinion, 6/22/17, at 11. The court noted:

> In hearing Mr. Key's testimony during the closed hearing, this court was satisfied with, and renewed, its initial ruling to not allow Mr. Key to proceed. Mr. Key was first presented to this court and counsel as a fact witness to discuss the training that [Appellant] received through the Baltimore City Police Department, however, upon hearing his full testimony, this court found Mr. Key to be expressing an expert opinion. Mr. Key failed to offer any testimony regarding personal knowledge of specific training [Appellant] underwent in preparation to become a police officer. As such, because Mr. Key was proposing expert opinions, but was not qualified to or offered by the defense to testify as an expert, this court sustained the Commonwealth's objection to the testimony of Mr. Key and excluded the testimony in its entirety.

***Id.*** at 12 (some capitalization omitted). As the Commonwealth observed:

> Mr. Key's testimony would have been pure speculation as to what was taught to [Appellant] and, therefore, was inadmissible. More specifically, Mr. Key failed to offer any testimony regarding personal knowledge of specific training that [Appellant] underwent in preparation to become a police officer. Moreover, Mr. Key was presented as a fact witness. Mr. Key was not qualified as an expert to testify as a psychiatric expert regarding [Appellant's] subjective state of mind. As he was not qualified as an expert, Mr. Key was improperly proposing expert opinions. As such the trial court properly sustained the Commonwealth's objection and

precluded the jury from hearing Mr. Key's testimony and there was no abuse of discretion.

Commonwealth's Brief at 53-54.

We find no abuse of discretion stemming from the trial court's ruling. Appellant's fourth issue fails.

In his fifth and final issue, Appellant asserts constitutional violations of his due process rights resulting from the trial court's limitations on Kapelsohn's testimony and preclusion of Key's testimony, arguing that the court's rulings interfered with his ability to present his justification defense. "A question regarding whether a due process violation occurred is a question of law for which the standard of review is *de novo* and the scope of review is plenary." *Commonwealth v. Tejada*, 161 A.3d 313, 317 (Pa. Super. 2017) (quoting *Commonwealth v. Smith*, 131 A.3d 467, 472 (Pa. 2015) (additional citation omitted)).

As explained above, we have already determined that the trial court did not abuse its discretion in limiting Kapelsohn's testimony or in excluding Key's testimony. We agree with the Commonwealth's suggestion that Appellant's due process argument "centers on what he believes to be errors of the trial court" rather than violations of any constitutional rights. Commonwealth Brief's at 57. As the Commonwealth notes:

> [Appellant] claims that his Constitutional rights were violated because the trial court made an evidentiary ruling that was contrary to his interests. This logic is flawed. One cannot jump to the conclusion that a Constitutional right to present a defense was infringed simply because the court's decision was not to

[Appellant's] liking. [Appellant] was able to present a defense based on *admissible* evidence at trial. [Appellant] is not entitled to present unqualified expert testimony.

Furthermore, [Appellant] fails to meet the appropriate burden as set forth by the United States Supreme Court [in **Holmes v. South Carolina**, 547 U.S. 319, 324 (2006)].[4] More specifically, [Appellant] fails to discuss or demonstrate that Pa.R.E. 702 infringes upon a weighty interest of [Appellant], that the rule is arbitrary, or that the rule is disproportionate to the purpose it is designed to serve. **See Holmes**, 547 U.S. at [324]. Thus, [Appellant] fails in his claim of unconstitutionality and his judgment of sentence should be affirmed.

*Id.* (some capitalization omitted) (emphasis in original).

We agree. Appellant has not demonstrated that his due process rights were violated because Pa.R.E. 702 unconstitutionally infringed upon his interests. Rather, he has simply established that he disagrees with the trial court's application of Rule 702 to the testimony the trial court appropriately limited or excluded. The trial court explained:

Mr. Kapelsohn's testimony regarding human physiological reactions while under stress was beyond the scope of his qualifications as an expert in the field of firearms and crime scene reconstruction involving firearms and was, therefore, inadmissible. Mr. Key was offered to this court as a fact witness but his testimony was that of an expert. However, Mr. Key was not qualified by this court to render an expert opinion. As such, his testimony was, in its entirety, inadmissible. By excluding testimony that was inadmissible this court did not violate [Appellant]s due process rights under the 6th and 14th

---

[4] In **Holmes**, the United States Supreme Court explained that a defendant's right to present a complete defense "is abridged by evidence rules that infring[e] upon a weighty interest of the accused and are arbitrary or disproportionate to the purposes they are designed to serve." **Id.** at 324 (internal citations and quotations omitted).

- 16 -

Amendments to the U.S. Constitution and Article I, Section 9 of the Pennsylvania Constitution.

Trial Court Opinion, 6/22/17, at 13 (some capitalization omitted). Appellant's due process claim lacks merit.

Finding no merit in Appellant's contentions, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/31/18