J-S14029-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DEJEREK BASIL SMALLWOOD, | |
| Appellant | No. 909 MDA 2016 |

Appeal from the Judgment of Sentence December 18, 2015
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0000778-2014

BEFORE:  GANTMAN, P.J., SHOGAN and STRASSBURGER,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED MARCH 13, 2017**

Appellant, Dejerek Basil Smallwood, appeals from the December 18, 2015 judgment of sentence entered in the Court of Common Pleas of York County following his conviction by a jury of two counts of first-degree murder and conspiracy to deliver heroin.[1]  We affirm.[2]

The trial court summarized the facts of the crime as follows:

_____

[*]  Retired Senior Judge assigned to the Superior Court.

[1]  18 Pa.C.S. § 2502, 18 Pa.C.S. § 903, and 35 P.S. § 780-113 (a)(30), respectively.

[2]  The trial court docket indicates that Appellant's post-sentence motion was denied on May 6, 2016, and his notice of appeal was filed on May 31, 2016. Therefore, we reject the Commonwealth's assertion that the appeal is untimely.  Commonwealth Brief at 12–13.

On November 23, 2013, at approximately 7:00 PM police were dispatched to an alley between South Hartley Street and West Mason Avenue in York Township, located in York County, Pennsylvania. Upon arrival, police found two victims lying in the street. The responding officer used his flashlight to check on the first victim and determined he was dead. The second victim was still alive but not speaking. The victim pulled up his shirt to show the officer where he had been shot. Shortly thereafter, the second victim passed. Prior to EMS arrival[,] other officers from the department had arrived on scene and set up a crime scene with yellow tape to secure any evidence that might have been in and around the area. The first victim was identified as Braydon Aldinger; identification was made from his license in his wallet. The wallet was not photographed nor was it marked as evidence. The responding officer gave the wallet to Aldinger's mother who was on scene. The second victim was identified as Derek Ferree; identification was made from his license in his wallet. At that time, responding officers did not see anyone else in the alleyway of South Hartley Street and West Mason Avenue. The coroner arrived on scene and ruled both deaths a homicide caused by gunshot wounds. Homicide detectives were called in to investigate and eyewitnesses were taken to the station for questioning.

The same night, on November 23, 2013, homicide detectives interviewed Arianna Tavares (Tavares), who told police she was an eyewitness to the crime. During the interview Tavares told detectives, she was with both victim's [sic] that night and they had arranged to meet with Appellant and a second man Laquan Pierrelouis (Pierrelouis), in the alley way of South Hartley to buy heroin. Tavares told detectives that one of the victims punched Appellant in the face and a tussle broke out. She explained that once the tussle started, she began to run away from the alley and that is when she heard the two shots. On December 10, 2013, charges were filed against Appellant and Pierrelouis based off of the police interview with Tavares.

York County Police Department's homicide detective George Ripley was assigned as lead detective on this case. Detective Ripley collected a surveillance video taken by the security system in the back of Lincoln Charter School, which is located across from the crime scene. The surveillance video showed a group of five people, four males, and one female walking down the alley of South Hartley Street. The video shows

an altercation and one male running from the crime scene with a weapon in his hand.

Three days later, on November 26, 2013, Tavares was interviewed by police for a second time. During this interview she was shown the surveillance video collected from Lincoln Charter School. After viewing the video, she identified Appellant as the individual running down the alley with the weapon in his hand. Tavares explained that she could identify Appellant because of the clothes he was wearing.

Trial Court Opinion, 5/6/16, at 1–3 (internal citations omitted).

Appellant's jury trial began on November 2, 2015, and on November 6, 2015, the jury convicted Appellant as described above. The trial court sentenced Appellant on December 18, 2015, to concurrent terms of life imprisonment for the two murder convictions and a consecutive term of imprisonment of three to six years for conspiracy to deliver heroin. Appellant filed a timely post-sentence motion, which the court denied on May 6, 2016. Appellant filed a timely notice of appeal on May 31, 2016. Both Appellant and the trial court complied with Pa.R.A.P. 1925.[3]

Appellant raises the following issues on appeal:

Whether the evidence was insufficient to find [Appellant] guilty of first degree murder?

Whether the verdict was against the weight of the evidence?

_____

[3] The trial court referred us to its opinion denying Appellant's post-sentence motion in place of a separate opinion pursuant to Pa.R.A.P. 1925(a). Pa.R.A.P. 1925(a) Opinion, 7/13/16.

> Whether the lower court abused its discretion when it refused to grant [Appellant's] request to have a "use of force" expert testify at trial?
>
> Whether the lower court abused its discretion when it sentenced [Appellant] to a mandatory life sentence, without a hearing as to [Appellant's] mental functioning?
>
> Whether the lower court abused its discretion when it refused to allow [Appellant] to submit supplemental written *voir dire* questions on race and racial bias when there were no African Americans on the jury, and [Appellant] is Africian [sic] American and the two victims and primary Commonwealth witness were all white[?]

Appellant's Brief at 4.[4]

We first address Appellant's challenge to the sufficiency of the evidence supporting his conviction of first-degree murder. Our well-settled standard of review of the sufficiency of the evidence to support a conviction is as follows:

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt. The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Further, the trier of fact is free to believe all, part, or none of the evidence.

*Commonwealth v. Rayner*, ___ A.3d ___, ___, 2016 PA Super 310, *2 (Pa. Super. filed Dec. 29, 2016). "[T]he Commonwealth need not establish guilt to a mathematical certainty." *Commonwealth v. Tukhi*, 149 A.3d

_____

[4] We have reordered the issues set forth in Appellant's brief.

- 4 -

881, 887 (Pa. Super. 2016).  As "long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld." *Id*.

To sustain a conviction for first-degree murder, the Commonwealth must prove beyond a reasonable doubt that the defendant committed "an intentional killing."  18 Pa.C.S. § 2502(a).  An intentional killing is defined as "[k]illing by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing."  18 Pa.C.S. § 2502(d).  To convict a defendant of first degree murder, our Supreme Court explained that "the Commonwealth must prove:  a human being was unlawfully killed; the defendant was responsible for the killing; and the defendant acted with malice and a specific intent to kill." *Commonwealth v. Houser*, 18 A.3d 1128, 1133 (Pa. 2011).

Appellant has waived any argument concerning the sufficiency of the evidence.  Regarding sufficiency-of-the-evidence issues, an appellant must specify the elements upon which the evidence was insufficient in order to preserve the issue for appeal. *See Commonwealth v. Williams*, 959 A.2d 1252, 1257–1258 (Pa. Super. 2008) (finding waiver where the appellant failed to specify the elements of particular crime not proven by the Commonwealth). *See also Commonwealth v. Gibbs*, 981 A.2d 274, 281 (Pa. Super. 2009) (finding claim waived under *Williams* for failure to specify

either in Rule 1925(b) statement or in argument portion of appellate brief which elements of crimes were not proven beyond a reasonable doubt).

Appellant's one-paragraph challenge does not cite any supporting case law other than the standard of review. Appellant's Brief at 22. Appellant does not challenge any particular element of murder. He makes only a passing allegation that he lacked the specific intent to kill the victims and complains that there was "no eye witness testimony regarding the shooting." *Id*. Appellant summarily avers that the Commonwealth "must do more than show there was a shooting that resulted in death to prove First Degree Murder." *Id*.

Furthermore, even if Appellant had presented the claim in his Pa.R.A.P. 1925(b) statement or brief with the required particularity, we would conclude the issue lacks merit. The trial court offered a complete analysis of the evidence at trial and its relevance. The trial court stated:

> To sustain a conviction for murder of the first degree, the Commonwealth must prove that: (1) a human being was unlawfully killed; (2) the person accused is responsible for the killing; and (3) the accused acted with specific intent to kill. 18 Pa.C.S. § 2502(d); [*Commonwealth v.*] *VanDivner*, 962 A.2d [1170,] 1176 [(Pa. 2009)]. "Specific intent may be inferred from the use of a deadly weapon on a vital part of the victim's body." *Id.*, *citing Commonwealth v. Rivera*, 565 Pa. 289, 773 A.2d 131,135 (2001), *cert. denied*, 535 U.S. 955, 122 S.Ct. 1360, 152 L.Ed.2d 355 (2002).
>
> When a defendant introduces evidence of self-defense, the Commonwealth bears the burden of disproving such a defense beyond a reasonable doubt. *Commonwealth v.Torres*, 766 A.2d 342, 345 (Pa. 2001). "The Commonwealth cannot sustain its burden of proof solely on the fact finder's disbelief of the

defendant's testimony. The 'disbelief of a denial does not, taken alone, afford affirmative proof that the denied fact existed so as to satisfy a proponent's burden of proving that fact.'" *Id*. (quoting *Commonwealth v. Graham*, 596 A.2d 1117, 1118 (Pa. 1991)).

Also, we are mindful that the period of reflection required for premeditation to establish the specific intent to kill "may be very brief; in fact the design to kill can be formulated in a fraction of a second. Premeditation and deliberation exist whenever the assailant possesses the conscious purpose to bring about death." *Commonwealth v. Drumheller*, 808 A.2d 893, 910 (Pa. 2002). Further, the trier of fact, in passing upon the credibility of the witnesses, is "free to believe all, part, or none of the evidence." *Commonwealth v. Rivera*, 983 A.2d 1211, 1220 (Pa. 2009); *Commonwealth v. Cousar*, 593 Pa. 204, 928 A.2d 1025,1033 (2007).

Here, the testimony of Tavares and Pierrelouis as to the circumstances surrounding the death of both victims, Appellant's own testimony that he used a deadly weapon that night, coupled with Dr. Roney's testimony that the bullet[] wounds were on a vital part of the victims' bod[ies] enabled the Commonwealth to establish the elements of first-degree murder. Appellant, however, offered an affirmative defense to the charge. He claimed that he acted in self-defense, believing that both victims sought to kill him. To elucidate the Commonwealth's specific burden in disproving Appellant's claim of self-defense, we must analyze Section 505[9] of our Crimes Code, in the light most favorable to the Commonwealth as the verdict winner. First, turning to subsection (a),[10] we look to see if use of force by Appellant was justified in this situation. The evidence presented by both the Commonwealth and Appellant show[s] that the victims initiated the fight with Appellant[11] and he was not the initial aggressor. Further, Appellant testified that he was very scared and afraid because both men were punching him in the face. This evidence establishes that Appellant was justified in using a reasonable amount of force to protect himself. This brings our analysis to Section 505, subsection (b).[13]

[9] 18 Pa.C.S. § 505. Use of force in self-protection.

[10] (a) Use of force justifiable for protection of the person.—The use of force upon or toward another

- 7 -

person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

[11] All eyewitnesses testified that Appellant did not provoke either victim and the victim sucker punched Appellant. *See* N.T. 11/2-11/6/2015 at 176–251, 244–264, 585–599.

[13] (b) Limitations on justifying necessity for use of force.—

* * *

(2) The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat; nor is it justifiable if:

> (i) the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or

> (ii) the actor knows that he can avoid the necessity of using such force with complete safety by retreating or by surrendering possession of a thing to a person asserting a claim of right thereto or by complying with a demand that he abstain from any action which he has no duty to take. 18 Pa.C.S. § 505(a), (b)(2)(i), (ii).

The use of deadly force is not justifiable unless the Appellant believed that such force was necessary to protect him against death or serious bodily injury.[14] The Commonwealth presented evidence that neither victim had a weapon during the fight. Accordingly, Appellant was not justified in responding to the punch in the face by employing deadly force. Under the Commonwealth's version of the facts, which the jury accepted, one victim punched Appellant in the face and they began to

tussle, to which Appellant reacted by fatally shooting both people. While the jury was free to believe Appellant's testimony relating to self-defense, *i.e.*, that he was being attacked and feared they might get his gun and use it on him and does not remember shooting the gun, the jury did not do so. *See Commonwealth v. Bracey*, 662 A.2d 1062, 1066 (Pa. 1995) (holding that "the jury was free to disbelieve the evidence proffered by Appellant in support of claim of self-defense"); *Commonwealth v. Carbone*, 574 A.2d 584, 589 (Pa. 1990) (providing that "although the Commonwealth is required to disprove a claim of self-defense arising from any source beyond a reasonable doubt, a jury is not required to believe the testimony of the defendant who raises the claim").

[14] 18 Pa.C.S. § 505 (b).

Therefore, we conclude that there was sufficient evidence to demonstrate that Appellant unlawfully killed both victims, and that such killing was willful, deliberate, and premeditated. Having satisfied the elements of first-degree murder, we further conclude, that the Commonwealth presented sufficient evidence to disprove Appellant's claim of self-defense beyond a reasonable doubt.

Trial Court Opinion, 5/6/16, at 15–18 (some footnotes and internal citations omitted).

Appellant next assails the weight of the evidence. "The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." **Commonwealth v. Gonzalez**, 109 A.3d 711, 723 (Pa. Super. 2015), *appeal denied*, 125 A.3d 1198 (Pa. 2015). In **Commonwealth v. Clay**, 64 A.3d 1049 (Pa. 2013), our Supreme Court set forth the following standards to be employed in addressing challenges to the weight of the evidence:

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. ***Commonwealth v. Widmer***, 560 Pa. 308, 319, 744 A.2d 745, 751-[7]52 (2000); ***Commonwealth v. Brown***, 538 Pa. 410, 435, 648 A.2d 1177, 1189 (1994). A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. ***Widmer***, 560 A.2d at 319–[3]20, 744 A.2d at 752. Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" ***Id***. at 320, 744 A.2d at 752 (citation omitted). It has often been stated that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." ***Brown***, 538 Pa. at 435, 648 A.2d at 1189.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence*. **Brown***, 648 A.2d at 1189. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. ***Commonwealth v. Farquharson***, 467 Pa. 50, 354 A.2d 545 (Pa. 1976). One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

***Widmer***, 560 Pa. at 321–[3]22, 744 A.2d at 753 (emphasis added).

- 10 -

*Clay*, 64 A.3d at 1054–1055. "Thus, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." *Commonwealth v. Diggs*, 949 A.2d 873, 879–880 (Pa. 2008).

Appellant asserts that it shocks one's sense of justice that if Appellant:

had not been a young, inner city black male engaged in a drug transaction with a gun he was not permitted to carry, but instead had been a young white woman attacked walking home from work, with a gun she was licensed to carry, not only would he not have been found guilty, not only would he not have been charged, but he may very well have been on the front cover of American Rifleman, the official magazine of the NRA, lauded a hero and set as a prime example of why we all should have guns. If we are truly honest with ourselves, we know this is the truth, and that inherent unfairness and bias in our system is what makes this verdict so shocking. The weight of the evidence —the true evidence—the only evidence that should matter—is not enough to upload [sic] a conviction.

Appellant's Brief at 23–24.

Although Appellant raised a challenge to the weight of the evidence in his post-sentence motion, the above-asserted basis for Appellant's claim was not presented to the trial court in his motion. Post-Sentence Motion, Motion for Judgment of Acquittal, Motion for New Trial, 12/28/15, at VII. Instead, Appellant simply reiterated that evidence presented at trial failed to support the crime of first degree murder. *Id*. Further, Appellant's Pa.R.A.P. 1925(b) statement claimed only that "[t]he Trial Court erred in finding the weight of the evidence supported the convictions." Pa.R.A.P. 1925 (b) Statement, 7/5/16, at ¶ F. Thus, the trial court was never given the opportunity to

evaluate whether the weight of the evidence supported Appellant's conviction for the reason now suggested.

Appellant's attempt to raise this issue for the first time on appeal results in waiver, as Appellant has not preserved the issue for our review. ***Commonwealth v. Oliver***, 128 A.3d 1275, 1284 (Pa. Super. 2015) (issues not raised in the lower court are waived and cannot be raised for the first time on appeal) (citing Pa.R.A.P. 302(a)); Pa.R.A.P.1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.").

Furthermore, it was for the jury as the finder of fact to determine the credibility of the witnesses and believe all, part, or none of the evidence. ***Gonzalez***, 109 A.3d at 723. This Court does not reweigh the evidence. Pursuant to our standard of review, the trial court did not abuse its discretion in concluding that the verdict does not shock the conscience. Thus, we discern no abuse of discretion by the trial court's denial of Appellant's post-sentence motion for a new trial based on the weight of the evidence.

We next address whether the trial court abused its discretion when it refused to grant Appellant's request to have a "use of force" expert testify at trial.

> "The admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion." ***Commonwealth v. Reid***, 627 Pa. 151, 99 A.3d 470, 493

(2014). An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. ***Commonwealth v. Davido***, 106 A.3d 611, 645 (Pa. 2014).

***Commonwealth v. Woodard***, 129 A.3d 480, 494 (Pa. 2015), *cert. denied sub nom*., ***Woodard v. Pennsylvania***, ___ U.S. ___, 137 S.Ct. 92 (2016).

In his brief, Appellant asserts that he:

wanted Emmanuel Kapelsohn to testify as a use of force expert. The [trial court] granted [Appellant's] request for funds to hire Mr. Kapelsohn to do a report, after a review of Mr. Kapelsohn's curriculum vitae, but ultimately the trial [c]ourt denied the Defense's request to testify at trial, stating his testimony was irrelevant and inadmissible under Pennsylvania law.

Appellant's Brief at 12. Unfortunately, Appellant wholly fails to identify where in the record of this five-day trial Appellant allegedly requested such testimony and where the trial court denied it. Appellant refers to jury instructions on self defense and reproduces three pages of instructions in his brief without identifying whether they are instructions given in this case or where in the record they exist. Appellant's Brief at 13–16. Appellant argues the potential relevancy of Mr. Kapelsohn's alleged testimony without identifying the basis for such a claim or where in the expert report it can be found. ***Id***. at 16–17.

Pa.R.A.P. 2119 (c) provides, "If reference is made to . . . evidence . . . or any other matter appearing in the record, the argument **must set forth,** in immediate connection therewith, or in a footnote thereto, **a reference to**

**the place in the record where the matter referred to appears**. . . .”
*Id*. (emphasis added). As we stated in ***Commonwealth v. Samuel***, 102
A.3d 1001 (Pa. Super. 2014), “It is not this Court's responsibility to comb
through the record seeking the factual underpinnings of an appellant's
claim.” ***Commonwealth v. Mulholland***, 702 A.2d 1027, 1034 n.5 (Pa.
1997). Further, this Court will not become counsel for an appellant . . . . It
was [the appellant's] responsibility to provide an adequately developed
argument by identifying the factual bases of his claim . . . . ***Id***. at 1005. In
***Commonwealth v. Harris***, 979 A.2d 387 (Pa. Super. 2009), we stated as
follows:

> When an allegation is unsupported [by] any citation to the
> record, such that this Court is prevented from assessing this
> issue and determining whether error exists, the allegation is
> waived for purposes of appeal. . . . ***Commonwealth v.***
> ***Einhorn***, 911 A.2d 960, 970 (Pa. Super. 2006) (“An appellate
> brief must provide citations to the record . . . ). ***See also***
> ***Commonwealth v. Tielsch***, 934 A.2d 81, 93 (Pa. Super.
> 2007); ***Commonwealth v. Judd***, 897 A.2d 1224, 1233 (Pa.
> Super. 2006).

*Id*. at 393 (some internal citations omitted). Due to Appellant's complete
lack of citation to the record in support of his claim, we conclude the issue is
waived.

Even if not waived, we would have relied on the trial court's
explanation for denying the testimony, which was as follows:

> Appellant argues he was denied a fair trial because the
> Court erred in not permitting his expert witness to testify.
> Appellant maintains that his use of force expert, Emmanuel
> Kapelsohn was qualified to address both the subjective and

- 14 -

objective reasonableness of Appellant's actions relating to his claim of self-defense. All evidence that is relevant is admissible, including expert testimony. Pa.R.E. 402. Whether evidence has a tendency to make a given fact more or less probable is to be determined by the court in the light of reason, experience, scientific principles and the other testimony offered in the case. Id.

Expert testimony is admissible in criminal cases when it involves explanations and inferences not within the range or ordinary training, knowledge, intelligence and experience. *Commonwealth v. Nasuti*, 123 A.2d 435, 438 (Pa. 1956). The use of experts during trial is not meant to usurp the function of the jury: to determine the credibility of witnesses; to judge the case as a whole; or to make findings which the jury is equally capable of making on its own. *Commonwealth v. Dunkle*, 602 A.2d 830, 838 (Pa. 1992). Expert testimony that attempts in any way to reach the issue of credibility and usurp the function of the jury will not be permitted. Id. As expert testimony relates to self-defense, psychiatric testimony regarding the objective element, as in whether the defendant's belief that he was in immediate danger was reasonable in light of the facts is inadmissible. *Commonwealth v. Light*, 326 A.2d 288 (Pa. 1973). However, expert testimony in the nature of the subjective element, as in whether the defendant used deadly force because of an "honest, bona fide belief that he was in imminent danger," is generally admissible.

Here, Appellant filed a Motion in Support of Expert Testimony on October 19, 2015. In Appellant's motion, the proffer stated the expert would testify to: the circumstances surrounding the attack; a comparison of the circumstances in this case to how police officers are trained to act in similar situations; and weapon retention issues including the training police and others receive in weapon retention. Appellant claims that such evidence was relevant in aiding the jury on the issue of self-defense because the manner in which police are trained have [sic] scientific rationales and the fact that Appellant was not trained would make it more likely he would not be able to overcome the stress of the situation. *See generally* Defendant's Motion in Support of Expert Testimony, 10/19/2015. The final conclusion in Kapelsohn's expert report was as follows,

> For the foregoing reasons, it is my opinion, to a reasonable degree of professional certainty in my fields of expertise, that firing a handgun at two attackers under the circumstances and principles taught to law enforcement or security officers, or arm[ed] private individuals, the nature of the attack and attempted robbery, initiated by and continued for 20-30 seconds by both victims, was such that Appellant could reasonably believe he was likely to suffer death or serious bodily injury following the next well-aimed punch or kick....

Commonwealth's Motion to Preclude Introduction of Testimony by Emanuel Kapelsohn, 10/19/2015, Appendix A. We also find it important to note that Kapelsohn, although trained in police tactics and use of force, is not a physiologist or psychiatrist. Id.

Here, Kapelsohn's testimony is not relevant to the facts of the case. The proffer compared the Appellant's situation with that of a hypothetical person trained in law and enforcement and weapon retention. There is no evidence that Appellant has any type of weapons or law enforcement training. Allowing the jury to hear evidence of how an officer would have reacted to the situation or how or why they are trained to react a certain way would not aid the jury in deciding if it is more or less likely that Appellant was acting under a bona fide belief that he was in imminent danger because he had no training. Additionally, we believe that this testimony would have confused the jury.

Assuming *arguendo* that Kapelsohn's testimony is relevant, it is inadmissible under *Commonwealth v. Light*, 326 A.2d 288 (Pa. 1973)[,] because his testimony went to the objective element of self-defense. Kapelsohn's ultimate opinion relates to the reasonableness of Appellant's actions under the facts present in this case. The basis of Kapelsohn's conclusion explained it was reasonable for Appellant to fire a weapon at the victims because individuals trained in law enforcement and weapons retention would have acted in a similar way. Therefore, because Kapelsohn's testimony was irrelevant and went to the objective element of self-defense is was [sic] inadmissible.

Trial Court Opinion, 5/6/16, at 5–7 (footnote omitted).

Appellant next asserts that the trial court abused its discretion in sentencing him to a life sentence "without a hearing as to defendant's mental functioning." Appellant's Brief at 4; Statement of Questions Involved. This issue was never raised in Appellant's Pa.R.A.P. 1925(b) statement and is waived. *Commonwealth v. Proctor*, ___ A.3d ___, 2017 PA Super 30 (Pa. Super. filed February 9, 2017) (quoting *Commonwealth v. Perez*, 103 A.3d 344, 347 n.1 (Pa. Super. 2014)).

In the argument section of his brief, however, Appellant asserts a wholly different issue, that his sentence violates the United States and Pennsylvania Constitutions and the rationale expressed in *Miller v. Alabama*, ___ U.S. ___, 132 S. Ct. 2455 (2012). Appellant's Brief at 24. Appellant asserted a claim based on *Miller* in his Pa.R.A.P. 1925(b) statement but not in his Statement of Questions Involved. However, issues related to the legality of sentence, as is Appellant's purported *Miller* claim, cannot be waived. *Commonwealth v. Watley*, 81 A.3d 108, 118 (Pa. Super. 2013). Thus, despite Appellant's failure to present the issue in his Statement of Questions Involved, we will address it.

Appellant, who was born October 8, 1992,[5] was twenty-one years old on November 23, 2013, the date of the murders. The *Miller* decision is applicable only to juveniles who were under the age of eighteen at the time

---

[5] Arraignment, 3/28/14; N.T., 11/5/15, at 585 (Appellant's age at trial noted as twenty-three).

of their crimes. ***Miller***, ___ U.S. at ___, 132 S.Ct. at 2460 ("We therefore hold that mandatory life without parole for those **under the age of 18 at the time of their crimes** violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'") (emphasis added). Thus, we reject Appellant's claim.

Appellant contends in his final issue that the trial court abused its discretion in refusing to permit Appellant to submit supplemental written *voir dire* questions on race and racial bias. This issue is waived by Appellant's failure to develop the claim in his brief. ***Samuel***, 102 A.3d at 1005 ("The Rules of Appellate Procedure require that appellants adequately develop each issue raised with discussion of pertinent facts and pertinent authority. ***See*** Pa.R.A.P. 2119."). Appellant's argument consists of two paragraphs. The first paragraph describes the trial court's discretion relating to *voir dire;* the second paragraph, consisting of three conclusory sentences that are asserted without any supporting case the law, comprise his argument. This is insufficient to constitute meaningful appellate review.

> [I]ssues are waived for failing to present any argument in support thereof. ***See Wirth v. Commonwealth***, 95 A.3d [822] 837 [(Pa. 2014)] (holding that "where an appellate brief fails to ... develop an issue in any other meaningful fashion capable of review, that claim is waived. It is not the obligation of an appellate court to formulate appellant's arguments for him.") (internal quotations omitted); ***see also*** Pa.R.A.P. 2119(a) (providing that appellate briefs must contain "such discussion and citation of authorities as are deemed pertinent").

***Woodard***, 129 A.3d at 509.

Appellant sets forth a conclusory claim that is a mere restatement of the issue. He does not cite pertinent authority and provides no legal analysis. As such, we are completely without any guidance regarding his assertion. *See Commonwealth v. Bobin*, 916 A.2d 1164, 1168 (Pa. Super. 2007) (concluding that claim is waived where argument supporting it is "markedly insufficient, amounting to less than one-half page and containing no analysis or case citation."); *Commonwealth v. Hakala*, 900 A.2d 404, 407 (Pa. Super. 2006) ("Because Hakala fails to offer either analysis or case citation in support of the relief he seeks, we deem all of his questions waived."). *See also Commonwealth v. Rompilla*, 983 A.2d 1207, 1210 (Pa. 2009) ("Appellant's failure to adequately develop his arguments or support his bald assertions with sufficient citation to legal authority impedes meaningful judicial review of his claims.").

Even if not waived, the trial court provided a thorough analysis of Appellant's claim. Thus, if we addressed the issue on the merits, we would rely on the trial court's explanation, as follows:

> Appellant argues that he was unable to get a fair and impartial jury because he was not allowed to fully explore the potential racial prejudices through written or individual voir dire. The Pennsylvania and United States Constitutions guarantee an accused the right to a fair and impartial jury. U.S. Const., Amend VI; Pa. Const., Art. 1, § 9. To ensure an impartial jury, this [c]ourt has mandated that potential jurors be subject to voir dire to disclose fixed opinions or other reasons for disqualification so that challenges for cause can be made and peremptory challenges effectively exercised. *Commonwealth v. Drew*, 459 A.2d 318, 320 (Pa. 1983).

- 19 -

Under the Rules of Criminal Procedure, in all non-capital cases, the defendant has no absolute right to conduct individual voir dire, "the trial judge shall select one of two alternative methods of voir dire." Pa.R.Crim.P. 1106(e). The trial judge has the discretion to conduct individual voir dire of prospective jurors. *Commonwealth v. Berrigan*, 501 A.2d 226, 235 (Pa. 1985); *Commonwealth v. Glaspy*, 616 A.2d 1359, 1361 (Pa. 1992). Where the procedure used in effecting this examination substantially impairs a defendant's right to a fair and impartial jury, due process rights are violated and a new trial is mandated. *Ham v. South Carolina*, 409 U.S. 524 (1972).

When a capital defendant is accused of an interracial crime he is entitled to have prospective jurors informed about the race of the victim and questioned on the issue of racial bias. *Commonwealth v. Marrero*, 687 A.2d 1102 (Pa. 1996); *Commonwealth v. Christ[ia]n*, 389 A.2d 545 (Pa. 1978). However, where there are not factors present to infuse the case with an enhanced racial sensitivity and racial differences were not a focus of evidence at trial, one voir dire question posed by a trial court is sufficient to probe and reveal prejudices which might have bearing upon the case. Id.; *See also Commonwealth v. Hackett*, 735 A.2d 692 (Pa. 1999); *Commonwealth v. Craver*, 688 A.2d 691, 697 -98 (Pa. 1997).

In the instant case, the record demonstrates that the issue of race was neither raised at trial nor emphasized by the prosecutor. However, it is clear that circumstances were present which would make it reasonable to inquire into racial sensitivity of potential jurors. The fact that both victims were white and the Appellant a black man cannot be ignored. On October 19, 2015, Appellant filed a pre-trial motion to allow written questions concerning racial bias to be filled out by each member of the panel prior to voir dire. On October 26, 2015, the [c]ourt denied the motion as i[t] pertained to the written questions, but gave the Appellant the opportunity to ask the panel supplemental questions relating to race. The [c]ourt took numerous steps to ensure the jury panel was vetted as to potential racial bias. Specifically, the [c]ourt asked the Appellant how he would like to address questions of race with the jury. N.T. 11/2-11/6/2015 at 24-25, 13-25. Next, during preliminary voir dire, the [c]ourt specifically addressed the issue of race with the jury. Id. at 61, 1-12. Finally, the [c]ourt allowed Appellant to specifically question potential jurors about racial bias.

- 20 -

> DEFENSE: So the next thing I want to talk to you about is something nobody ever wants to talk about, and—but I have to talk about it, and that's race... I want to go into this because I think that race-is always just an issue to some degree ... So is there anybody when they walked in, they heard the charges, they saw my client sitting there, saw that he was black, and they thought, "yeah that makes sense?"
>
> DEFENSE: So sometimes—sometimes whites make fun of black names, of the way black people talk, and we hold it against them, we may not realize that we are doing it... so when Appellant gets on the stand, I'm going to tell you, he sounds black, he grew up in the city, and he sounds like it...is there anybody here who thinks that they would hold that against him?

Id. at 83-84.

It was within the [c]ourt's discretion to prohibit the use of written voir dire. The review of the record shows that the [c]ourt went beyond what is required by law to ensure the Appellant an impartial jury. The voir dire procedure used in this case did not impair Appellant's right to a fair and impartial jury. Thus, his due process rights were not violated.

Trial Court Opinion, 5/6/16, at 23–25. Finding no merit in any issue raised,

we reject Appellant's issues on appeal.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/13/2017