J-A22027-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| BRIAN ALLEN MARTIN | : | |
| | : | |
| Appellant | : | No. 1428 WDA 2022 |

Appeal from the PCRA Order Entered December 5, 2022
In the Court of Common Pleas of Elk County Criminal Division at No(s):
CP-24-CR-0000362-2019

BEFORE:  BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY OLSON, J.:              **FILED:  February 23, 2024**

Appellant, Brian Allen Martin, appeals from the December 5, 2022 order entered in the Court of Common Pleas of Elk County that denied his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  We affirm, in part, and vacate, in part, the December 5, 2022 order, and remand this case in accordance with this memorandum.[1]

The record demonstrates that, on January 22, 2020, a jury convicted Appellant of third-degree murder and recklessly endangering another person

---

[1] On November 2, 2023, the Commonwealth filed an application with this Court, requesting an extension of time in which to file a responsive brief in the instant appeal pursuant to Pennsylvania Rule of Appellate Procedure 105(b).  In light of our disposition herein, we deny the Commonwealth's request as moot.

On December 18, 2023, Appellant filed *pro se* a motion for extraordinary relief, with this Court, requesting a stay of appellate proceedings and a remand to allow the PCRA court to address Appellant's request for new PCRA counsel.  In light of our disposition here, we deny Appellant's motion as moot.

("REAP") following an incident at a local bar in Elk County in which Appellant shot the victim several times, while inside the establishment, and the victim later died.[2] On March 2, 2020, the trial court imposed an aggregate sentence of 12 to 24 years' incarceration.[3] This Court affirmed Appellant's judgment of sentence on November 15, 2021, and Appellant did not seek discretionary review with our Supreme Court. *Commonwealth v. Martin*, 268 A.3d 424, 2021 WL 5294016 (Pa. Super. filed Nov. 14, 2021) (unpublished memorandum). As such, Appellant's judgment of sentence became final on December 15, 2021. *See* 42 Pa.C.S.A. § 9543(b)(3) (stating, "[a] judgment becomes final at the conclusion of direct review, including discretionary review, in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of the time for seeking the review"); *see also* Pa.R.A.P. 1113(a) (requiring a petition for allowance of appeal to be filed within 30 days after entry of the order of this Court to be challenged on review).

On March 31, 2022, Appellant filed *pro se* a PCRA petition, his first, as well as a memorandum of law in support thereof, raising twelve claims of ineffectiveness of trial counsel. PCRA counsel was appointed to represent Appellant. Counsel filed an amendment to Appellant's *pro se* PCRA petition

---

[2] 18 Pa.C.S.A. §§ 2502(c) and 2705, respectively.

[3] Appellant was sentenced to a term of 12 to 24 years' incarceration for his third-degree murder conviction and to a concurrent term of 6 to 12 months' incarceration for his REAP conviction.

on May 9, 2022, and an additional amendment to Appellant's *pro se* PCRA petition on June 21, 2022.[4] The Commonwealth filed a response to Appellant's petition on July 11, 2022. On July 14, 2022, the PCRA court conducted an evidentiary hearing. Upon conclusion, the PCRA court permitted Appellant to submit a counseled memorandum of law in support of his petition within 30 days of receipt of the hearing transcript. The PCRA court also permitted the Commonwealth to submit a response within 14 days of Appellant's submission. N.T., 7/14/22, at 53.

On September 19, 2022, Appellant submitted *pro se* a memorandum of law in support of his petition. That same day, counsel for Appellant submitted a memorandum of law in support of the petition and attached, as an exhibit,

_____

[4] PCRA counsel did not file an amended PCRA petition but, rather, filed an amendment and an additional amendment to Appellant's *pro se* PCRA petition that incorporated all of the allegations contained in Appellant's *pro se* PCRA petition, as well as asserted new and additional allegations in support of Appellant's ineffectiveness claims.

In the May 9, 2022 filing, PCRA counsel reiterated Appellant's claim that trial counsel was ineffective for failing to request an "unreasonable belief" voluntary manslaughter jury instruction and to request that the offense be included on the verdict slip. **See** Amendments to *Pro Se* PCRA Petition, 5/9/22.

In the June 21, 2022 filing, PCRA counsel asserted additional claims that trial counsel was ineffective for failing to call a witness and for failing to introduce medical evidence of injuries Appellant allegedly sustained on the night of the incident. **See** Additional Amendments to *Pro Se* PCRA Petition, 6/1/22.

Appellant's *pro se* memorandum of law.[5]  The Commonwealth subsequently filed its response.

On November 10, 2022, Appellant filed *pro se* a motion for appointment of new PCRA counsel, alleging claims of ineffectiveness against then-current PCRA counsel pursuant to our Supreme Court's decision in **Commonwealth v. Bradley**, 261 A.3d 381 (Pa. 2021).[6]  The PCRA court denied Appellant's motion for appointment of new PCRA counsel on December 5, 2022, as having been untimely filed.

On December 5, 2022, the PCRA court dismissed Appellant's petition. Appellant filed a counseled notice of appeal on December 7, 2022, and, on

_____

[5] It is well-established that a petitioner, such as Appellant, who is represented by counsel, typically, has no constitutional right to hybrid representation in either a PCRA court or an appellate court.  **See Commonwealth v. Ellis**, 626 A.2d 1137, 1139 (Pa. 1993).  When PCRA counsel is aware of a *pro se* filing and subsequently adopts the *pro se* filing, however, the PCRA court may give force to the *pro se* filing without offending consideration of hybrid representation.  **See Commonwealth v. Mason**, 130 A.3d 601, 671 (Pa. 2015).

Thus, Appellant's filing *pro se* of a memorandum of law in the case *sub judice* constitutes hybrid representation.  However, because PCRA counsel adopted Appellant's *pro se* memorandum, as demonstrated by the attachment of the *pro se* filing as an exhibit to his own memorandum of law, we conclude that Appellant's *pro se* filing does not offend the considerations of hybrid representation.  **Id.**

[6] Although Pennsylvania jurisprudence disfavors hybrid representation, as discussed *supra*, our Supreme Court's decision in **Bradley**, as discussed in greater detail *infra*, permits a petitioner to file *pro se* a claim alleging ineffectiveness of PCRA counsel at the first opportunity available, even when represented by PCRA counsel who is the subject of the ineffectiveness claim.

December 13, 2022, the PCRA court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). On December 16, 2022, PCRA counsel filed a Rule 1925(b) statement.[7] The PCRA court filed its Rule 1925(a) opinion on January 5, 2023, relying on its opinion that accompanied the December 5, 2022 order dismissing Appellant's petition.

On January 27, 2023, Appellant filed *pro se*, with this Court, a motion for appointment of new PCRA counsel pursuant to **Bradley**, **supra**.[8] In a

_____

[7] PCRA counsel raised the following issues in the Rule 1925(b) statement:

1.    [Appellant] asserts that the [PCRA] court erred in failing to find [Appellant's] trial counsel ineffective for failing to request a jury instruction on "unreasonable belief" voluntary manslaughter (18 Pa.C.S.A. [§] 2503(b)), and failing to request that the crime of voluntary manslaughter be placed on the jury's verdict slip[.]

2.    Trial counsel's failures as noted above had no reasonable basis designed to effectuate [Appellant's] interests, and [Appellant] was prejudiced by trial counsel's failures as there exists a degree of likelihood sufficient to undermine confidence in the outcome of the proceedings[.]

3.    The [PCRA] court erred in failing to find [Appellant's] trial counsel ineffective, and in thereby failing to grant [Appellant] a new trial[.]

Rule 1925(b) Statement, 12/16/22 (extraneous capitalization omitted).

[8] Appellant's *pro se* motion for the appointment of new PCRA counsel was timestamped as having been received by this Court on January 31, 2023. The postmark on the envelope Appellant used to mail his motion, however, reveals a postage cancellation stamp dated January 27, 2023. Pursuant to the

February 7, 2023 *per curiam* order, this Court denied Appellant's motion for appointment of new PCRA counsel without prejudice "for Appellant to seek the appointment of substitute counsel in the [PCRA] court."[9]  On February 13, 2023, PCRA counsel filed an appellate brief, and the Commonwealth subsequently filed its responsive brief on April 13, 2023.

On April 21, 2023, PCRA counsel filed with this Court a *praecipe* to withdraw as counsel for Appellant.  In his request for permission to withdraw, PCRA counsel attached a copy of an April 5, 2023 PCRA court order granting Appellant's request for the appointment of new PCRA counsel without objection by the Commonwealth.  On May 18, 2023, this Court, in a *per curiam* order, granted original PCRA counsel's request to withdraw and directed the prothonotary of this Court to enter the appearance of Appellant's new PCRA counsel.

On June 8, 2023, new PCRA counsel filed a motion for a continuance with this Court, requesting "additional time to review the matter and potentially submit an amended brief."  Motion for Continuance, 6/8/23, at ¶2. In a June 12, 2013 *per curiam* order, this Court granted the request for a

_____

"prisoner mailbox rule," we deem Appellant's motion for the appointment of new PCRA counsel as filed on January 27, 2023.  **See Commonwealth v. Jones**, 700 A.2d 423, 426 (Pa. 1997) (explaining that, pursuant to the "prisoner mailbox rule," a document is deemed filed on the date an inmate deposits the mailing with prison authorities or placed it in the prison mailbox).

[9] In the *per curiam* order, this Court did not explicitly remand the case to the PCRA court to permit Appellant to file a request for the appointment of new PCRA counsel.  **See** *Per Curiam* Order, 2/7/23.

- 6 -

continuance.[10] On October 4, 2023, new PCRA counsel submitted an appellate brief on behalf of Appellant.

New PCRA counsel raises the following issues for our review:

1. Was trial counsel ineffective, and [] Appellant prejudiced thereby, for failing to request a jury instruction on "unreasonable belief" voluntary manslaughter and failing to request that [this offense] be placed on the jury slip?

2. Was trial counsel ineffective, and [] Appellant prejudiced thereby, by failing to present testimony [and] medical records regarding [] Appellant's physical condition at the time of the offense?

3. Was trial counsel ineffective, and [] Appellant prejudiced thereby, by failing to prepare [] Appellant in his [trial] testimony regarding the legal definition of "bodily injury" and "serious bodily injury,["] and in failing to conduct redirect examination regarding what [] Appellant meant [by his use of] the term "bodily harm[?"]

4. Was trial counsel ineffective, and [] Appellant prejudiced thereby, in failing to object to the [Commonwealth's] improper statements in [its] closing [remarks] that the decedent was defending the honor of a female bar patron?

Appellant's Brief, 10/4/23, at 4.

Appellant's first issue raises a claim that trial counsel provided ineffective assistance. *Id.* at 13-22. Specifically, Appellant alleges that trial counsel was ineffective for failing to request a jury instruction for "unreasonable belief" voluntary manslaughter and to request that the offense be included on the jury verdict slip. *Id.* Appellant argues that "[w]ithout the

---

[10] In the *per curiam* order, this Court relinquished panel jurisdiction but retained appellate jurisdiction. *Per Curiam* Order, 6/12/23.

benefit of a voluntary manslaughter instruction, the jury in the present case was left to believe that, if [Appellant fired] his weapon with the specific intent to kill, the only basis for not finding him guilty of either [first-degree murder or third-degree murder] was if he reasonably acted in self-defense." *Id.* at 19. Appellant contends that "[h]ad there been a jury instruction for [v]oluntary [m]anslaughter, [the] facts could have supported a jury determination that [Appellant] had a belief, reasonable or unreasonable, that shooting the decedent was necessary to defend himself." *Id.* at 20. Appellant asserts that trial counsel had no reasonable basis for failing to request an "unreasonable belief" voluntary manslaughter instruction or to request that the offense be included on the verdict slip. *Id.* Appellant further asserts that trial counsel lacked a reasonable basis in advising Appellant to forgo such an instruction or the inclusion of voluntary manslaughter on the verdict slip. Appellant thus concludes that he was prejudiced when the jury convicted him of third-degree murder. *Id.* at 20-21.

In addressing Appellant's issue, we are mindful of our well-settled standard and scope of review of an order dismissing a PCRA petition. Proper appellate review of a PCRA court's dismissal of a petition is limited to an examination of "whether the PCRA court's determination is supported by the record and free of legal error." *Commonwealth v. Miller*, 102 A.3d 988, 992 (Pa. Super. 2014) (citation omitted). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Lawson*, 90 A.3d 1, 4 (Pa. Super. 2014) (citations

omitted). "This Court grants great deference to the findings of the PCRA court, and we will not disturb those findings merely because the record could support a contrary holding." *Commonwealth v. Hickman*, 799 A.2d 136, 140 (Pa. Super. 2002) (citation omitted). In contrast, we review the PCRA court's legal conclusions *de novo*. *Commonwealth v. Henkel*, 90 A.3d 16, 20 (Pa. Super. 2014) (*en banc*), *appeal denied*, 101 A.3d 785 (Pa. 2014).

"It is well-established that counsel is presumed effective[.]" *Commonwealth v. Koehler*, 36 A.3d 121, 132 (Pa. 2012), *citing Strickland v. Washington*, 466 U.S. 668, 687-691 (1984). To plead and prove a claim of ineffective assistance of counsel, "a petitioner must establish: (1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective[ly] reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act." *Commonwealth v. Stewart*, 84 A.3d 701, 706 (Pa. Super. 2013) (*en banc*), *appeal denied*, 93 A.3d 463 (Pa. 2014). "A claim of ineffectiveness will be denied if the petitioner's evidence fails to meet any of these prongs." *Commonwealth v. Martin*, 5 A.3d 177, 183 (Pa. 2010). "In determining whether counsel's action was reasonable, we do not question whether there were other more logical courses of action which counsel could have pursued[. R]ather, we must examine whether counsel's decision[] had any reasonable basis." *Commonwealth v. Washington*, 927 A.2d 586, 594 (Pa. 2007). A petitioner establishes prejudice when he or she demonstrates "that there is a reasonable probability that, but for counsel's

[acts or omissions], the result of the proceeding would have been different."
***Commonwealth v. Johnson***, 966 A.2d 523, 533 (Pa. 2009).

Section 2503 of the Crimes Code defines voluntary manslaughter, in pertinent part, as follows:

### § 2503.  Voluntary manslaughter

. . .

**(b) Unreasonable belief killing justifiable.** - A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title (relating to general principles of justification), but his belief is unreasonable.

18 Pa.C.S.A. § 2503(b).   "Unreasonable belief" voluntary manslaughter is sometimes referred to as "imperfect self-defense."   ***Commonwealth v. Green***, 273 A.3d 1080, 1087 (Pa. Super. 2022), *appeal denied*, 289 A.3d 522 (Pa. 2022).

An "unreasonable belief" voluntary manslaughter jury instruction and, in turn, the inclusion of the offense on a verdict slip, is not required but, rather, is only justified in the limited circumstance where "a defendant held an unreasonable rather than a reasonable belief that deadly force was required to save his or her life, and all other principles of justification under 18 Pa.C.S.[A.] § 505 have been met."   ***Green***, 273 A.3d at 1087 (citation and original quotation marks omitted).  The "other principles of justification" under Section 505 require that the defendant did not provoke the threat and the defendant did not violate a duty to retreat.  ***Commonwealth v. Jones***, 271

A.3d 452, 458 (Pa. Super. 2021), *appeal denied*, 282 A.3d 1122 (Pa. 2022), *cert. denied*, 143 S.Ct. 469 (2022). Thus, the difference between self-defense and "unreasonable belief" voluntary manslaughter is that self-defense requires a "reasonably founded belief of either imminent peril to life or great bodily harm" whereas "unreasonable belief" voluntary manslaughter involves an uncontrollable fear of death or great bodily harm, "conceivable as existing [from the defendant's subjective belief] but not reasonably[, or objectively,] justified by the circumstances." **Green**, 273 A.3d at 1088, *quoting* **Commonwealth v. Light**, 326 A.2d 288, 294 (Pa. 1974); **see also Commonwealth v. Tilley**, 595 A.2d 575, 582 (Pa. 1991) (stating, an "unreasonable belief" voluntary manslaughter self-defense claim, also known as the "imperfect self-defense," "is imperfect in only one respect - an unreasonable rather than a reasonable belief that deadly force was required to save the [defendant's] life").

Stated simply, "unreasonable belief" voluntary manslaughter requires that a defendant hold a subjective belief in the danger of, *inter alia*, death or serious bodily injury and that the defendant's belief, as determined by the trier-of-fact, be unreasonable under the circumstances. **Green**, 273 A.3d at 1089. "[A] trial court shall charge on ["unreasonable belief"] voluntary manslaughter only when requested, where [] the offense of ["unreasonable belief"] voluntary manslaughter has been made an issue in the case[,] and the trial evidence could reasonably support a verdict on it." **Commonwealth v. Carter**, 466 A.2d 1328, 1329 (Pa. 1983) (recognizing that, the

- 11 -

unconditional requirement that an "unreasonable belief" voluntary manslaughter instruction be provided "only serves to confuse juries and invite them to base their verdicts on whim and caprice").

In denying Appellant's petition on this ground, the PCRA court stated,

[Appellant] claims that [trial counsel] failed to offer to the [trial] court a proposed jury instruction on ["unreasonable belief"] voluntary manslaughter. [Trial counsel] testified [at the PCRA evidentiary hearing] that this was specifically discussed between [trial counsel and Appellant] and rejected by both [parties], as both confusing to the jury, and opening the possibility for a "compromise verdict." The matter comes down to a credibility determination as to whether the conversation took place or not. Throughout his PCRA testimony, [trial counsel] was self-effacing and candid in his assessment as to many points and many topics. He openly [admitted] when he [could not] remember something, or when he failed to consider some questions or examination during the trial. On this point, however, [trial counsel] is clear, precise[,] and unequivocal. He [raised the "unreasonable belief" voluntary manslaughter instruction topic with Appellant], it was discussed, and it was rejected by [Appellant] and [trial counsel]. The [PCRA court] determines that [trial counsel's] testimony is credible on this point and finds no ineffectiveness by [trial counsel, as the matter was considered and rejected by [Appellant] and [his trial] counsel.

PCRA Court Opinion, 12/5/22, at 1-2 (unpaginated) (extraneous capitalization omitted).

At the PCRA evidentiary hearing, trial counsel testified that prior to submitting his proposed jury instructions to the trial court, which did not, ultimately, include a proposed instruction on "unreasonable belief" voluntary manslaughter, trial counsel met with Appellant to discuss the proposed instructions. N.T., 7/14/22, at 28-29. At the meeting with Appellant, trial

- 12 -

counsel's draft of the proposed jury instructions included an "unreasonable belief" voluntary manslaughter instruction, and this instruction was a point of discussion with Appellant. *Id.* Trial counsel stated that he and Appellant discussed whether to include the "unreasonable belief" voluntary manslaughter instruction "in detail." *Id.* Trial counsel recalled explaining how voluntary manslaughter was a lesser offense and would carry a lesser sentence. *Id.* at 31. Trial counsel explained that the standard jury instruction for "unreasonable belief" voluntary manslaughter was, in his opinion, confusing to the jury, making "it sound like the jurors have to convict [Appellant] of voluntary manslaughter."[11] *Id.* at 28. Appellant agreed that

---

[11] Pennsylvania Suggested Standard Criminal Jury Instruction Section 15.2503A, relating to voluntary manslaughter – murder in issue, states, in pertinent part, as follows:

**15.2503A  VOLUNTARY MANSLAUGHTER - MURDER IN ISSUE**

1. As my earlier definition of malice indicates, there can be no malice when certain reducing circumstances are present.  When these circumstances are present, a killing may be voluntary manslaughter, but never murder.  This is true when a defendant . . . [kills under an unreasonable mistaken belief in justifying circumstances].

2. Accordingly, you can find malice and murder only if you are satisfied beyond a reasonable doubt that the defendant was not acting . . . [under an unreasonable belief that the circumstances were such that, if they existed, would have justified the killing].

. . .

[5. The reducing circumstance of a defendant acting under an unreasonable belief that the circumstances of the killing were justified applies where:

a. the defendant actually believed that [he] [she] [a third party] was in immediate danger of death or serious bodily injury [or kidnapping or sexual intercourse compelled by force or threat] from [name of alleged victim] at the time [he] [she] used deadly force, but [his] [her] belief was unreasonable in light of the facts as they appeared to [him] [her] at the time;

b. the defendant did not provoke the use of force by the alleged victim by engaging in conduct that showed it was [his] [her] intent to cause death or serious bodily injury to the alleged victim; and

c. the defendant did not violate [his] [her] duty to retreat from the place, surrender possession of something, or comply with a lawful demand, as I explained those terms when I described to you the justification defense.

Therefore, you can find malice and murder only if the Commonwealth proves beyond a reasonable doubt one of the following elements:

a. the defendant did not actually believe that [he] [she] [a third party] was in immediate danger of death or serious bodily injury [or kidnapping or sexual intercourse compelled by force or threat] from [name of alleged victim] at the time [he] [she] used deadly force. Note that the unreasonableness of the defendant's belief is not the issue here, as it was when I explained justification to you. The question is whether the defendant actually believed such an immediate danger existed at the time [he] [she] used deadly force, and to prove malice through this element, the Commonwealth must prove that the defendant did not actually hold such a belief; or

b. the defendant provoked the use of force by the alleged victim by engaging in conduct that showed it was [his] [her] intent to cause death or serious bodily injury to the alleged victim; or

- 14 -

the standard jury instruction was confusing and, ultimately, decided that it should not be included in the proposed jury instructions submitted to the trial court because he, as well as trial counsel, did not want to "give the jurors a way out" by convicting Appellant of voluntary manslaughter. *Id.* at 28, 31. In short, Appellant elected to narrow the jury's options by eliminating voluntary manslaughter as a potential verdict and confronting the jury with the choice of either convicting Appellant of murder or exonerating him of that offense. *Id.*

Trial counsel explained that Appellant's defense strategy was "wholly self-defense," and that the video and audio recording of the incident was the

_____

> c. the defendant could have avoided the use of deadly force by [retreating from the place] [surrendering possession of something] [or] [complying with a lawful demand], as I previously defined [this] [those] concept[s] for you when I discussed the defense of justification.]
>
> . . .
>
> [6. If you do not find the defendant had malice and committed murder, you may find [him] [her] guilty of voluntary manslaughter as long as you are satisfied that the following three elements have been proven beyond a reasonable doubt:
>
> First, that [name of victim] is dead;
>
> Second, that the defendant killed [him] [her]; and
>
> Third, that the defendant had the intent to kill.]

Pa.S.S.J.I. (Criminal) §15.2503A (revised May 2019) (brackets in original); *see also* PCRA Evidentiary Hearing Exhibit C.

"crux of the case." *Id.* at 35. The video and audio recording, trial counsel stated, showed the victim coming toward Appellant "aggressively swinging" and attacking Appellant, that Appellant warned the victim he had a handgun, and that Appellant acted reasonably in shooting the victim, especially after he shot the victim once and the victim still came at Appellant. *Id.* at 32-33, 37-38, 40. At the evidentiary hearing, trial counsel agreed, on cross-examination, that providing the jury with an "unreasonable belief" voluntary manslaughter instruction, and including the offense on the verdict slip, would have allowed the jury to "split the baby" and come to a compromised guilty verdict based on "unreasonable belief" voluntary manslaughter. *Id.* at 39. Trial counsel believed it was "advantageous" for Appellant that the jury instructions, as well as the verdict slip, not to include "unreasonable belief" voluntary manslaughter, and Appellant agreed. *Id.*

Upon review, we discern no error of law or abuse of discretion in the PCRA court's denial of Appellant's petition on the ground that trial counsel was ineffective for failing to request an "unreasonable belief" voluntary manslaughter jury instruction or to request that the offense be placed on the verdict slip. As discussed *supra*, a trial court is not required to provide an "unreasonable belief" voluntary manslaughter jury instruction. Rather, a defendant is required to request such an instruction and the evidence must support the instruction.

Appellant failed to demonstrate that trial counsel's exclusion of the "unreasonable belief" voluntary manslaughter instruction from the proposed

jury instructions, and the verdict slip, lacked an objectively reasonable basis. At the evidentiary hearing, trial counsel explained that he believed that the "unreasonable belief" voluntary manslaughter jury instruction was confusing and that the inclusion of the instruction, and listing the offense on the verdict slip, simply provided the jury with an additional basis to convict him. Instead, trial counsel stated that Appellant's defense strategy was "wholly self-defense" and that trial counsel believed that the video and audio recording of the incident wholly supported their strategy of self-defense. As trial counsel explained, providing an instruction for "unreasonable belief" voluntary manslaughter, and listing the offense on the verdict slip, ran the risk that the jury would view voluntary manslaughter as a "compromise" to finding Appellant guilty of a criminal offense. Therefore, Appellant failed to demonstrate that trial counsel lacked reasonable grounds to omit "unreasonable basis" voluntary manslaughter from the jury instructions. *See Commonwealth v. Mason*, 130 A.3d 601, 618 (Pa. 2015) (stating that, the question is not whether there were other more logical courses of action which trial counsel could have pursued but, rather, whether trial counsel's decisions had any reasonable basis); *see also Commonwealth v. Sepulveda*, 55 A.3d 1108, 1122 (Pa. 2012) (stating that, a court, in assessing trial counsel's performance in the context of a ineffectiveness claim, must be careful to assess that performance "without the distortion of hindsight, and must instead review the circumstances under which [trial] counsel's decisions were made"); *Carter*, 466 A.2d at 1329 (recognizing that, an "unreasonable belief"

voluntary manslaughter jury instruction may confuse the jury and invite them to return a guilty verdict based on whim and caprice).

Finally, Appellant failed to show how he was prejudiced by the lack of an "unreasonable belief" voluntary manslaughter jury instruction, and the listing of the offense on the verdict form. The jury convicted Appellant of, *inter alia*, third-degree murder, which required the jury to find that Appellant killed the victim with legal malice, but without the specific intent to kill that was required to convict Appellant of first-degree murder.[12] ***See***

---

[12] The trial court's charge included the following pertinent excerpts with regard to third-degree murder and malice:

> For murder of the third[-]degree a killing is with malice if the perpetrator's actions show his wanton and willful disregard of an unjustified and extremely high risk that his conduct will result in the death or serious bodily injury of another. In this form of malice the Commonwealth need not prove that the perpetrator specifically intended to kill another. The Commonwealth must prove, however, that he took action while consciously disregarding the most serious risk he was creating and that, by his disregard of that risk, he demonstrated his extreme indifference to the value of human life.

> . . .

> Third-degree murder is a killing with malice that is not first- or second-degree murder. [Appellant] has been charged with third-degree murder. To find [Appellant] guilty of this offense, you must find that the following three elements have been proven beyond a reasonable doubt: First, that [the victim] is dead; second, that [Appellant] killed him; and third, that [Appellant] did so with malice.

- 18 -

***Commonwealth v. Geiger***, 944 A.2d 85, 90 (Pa. Super. 2008) (stating, "[m]alice is the essential element of third[-]degree murder, and is the distinguishing factor between murder and manslaughter"). Assuming, for purpose of our discussion, that an "unreasonable belief" voluntary manslaughter jury instruction had been provided and the offense was listed on the verdict slip, it still remains that the jury found beyond a reasonable doubt that Appellant acted with malice and was, therefore, guilty of third-degree murder. In determining that Appellant acted with malice, there is a low probability that the jury would have convicted Appellant of "unreasonable belief" voluntary manslaughter, as malice is not an element of this criminal offense. Therefore, Appellant failed to demonstrate how he was

---

> The word malice, as I'm using it, has a special legal meaning and it does not mean hatred, spite[,] or ill[-]will. Malice is a shorthand way of referring to particular mental states that the law regards as being bad enough to make a killing murder.
>
> . . .
>
> When deciding whether [Appellant] acted with malice, you should consider all of the evidence regarding his words and conduct and the attending circumstances that may show a state of mind.
>
> If you believe that [Appellant] intentionally used a deadly weapon on a vital part of [the victim's] body, you may regard that as an item of circumstantial evidence from which you may, if you choose, infer that [Appellant] acted with malice.

N.T., 1/29/20, at 234, 236-237.

prejudiced by the exclusion of the "unreasonable belief" voluntary manslaughter offense from the proposed jury instructions and verdict slip.

In sum, we discern no error of law or abuse of discretion in the PCRA court's order denying Appellant's petition on this ground. Therefore, we affirm, in part, the December 5, 2023 order dismissing Appellant's petition on this ground.

Appellant's remaining three issues are raised for the first time on appeal within the context of a *Bradley* ineffectiveness claim, wherein newly-appointed PCRA counsel asserts that Appellant discussed these issues with original PCRA counsel, but the issues were not presented in the PCRA petition. Appellant's Brief at 11 (stating that, original PCRA counsel was ineffective for failing to raise these issues before the PCRA court, pursuant to *Bradley*, *supra*).

In *Bradley*, our Supreme Court held that

> a PCRA petitioner may, after a PCRA court denies relief, and after obtaining new counsel **or acting *pro se***, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal.

*Bradley*, 261 A.3d at 401 (emphasis added) (recognizing that, in light of the PCRA's one-year jurisdictional time-bar (to wit, a petition must be filed within one year of final judgment), permitting a petitioner to raise *pro se* PCRA counsel's ineffectiveness at the first opportunity after the PCRA court denies relief, preserves a petitioner's right to effective PCRA counsel). In so holding, the *Bradley* Court rejected the argument that "consideration on collateral

appeal of claims of PCRA counsel ineffectiveness" constitutes a second or subsequent serial PCRA petition or violates the PCRA's one-year jurisdictional time-bar. *Id.* at 404. Moreover, the ***Bradley*** Court recognized that "[i]n some instances, the record before the appellate court will be sufficient to allow for disposition of any newly-raised ineffectiveness claims." ***Id.*** at 402. Otherwise, the ***Bradley*** Court explained, "the appellate court may need to remand [the case] to the PCRA court for further development of the record and for the PCRA court to consider such claims as an initial matter." ***Id.***

A review of the record demonstrates that Appellant's first opportunity to raise original PCRA counsel's ineffectiveness emerged upon the filing of current PCRA counsel's appellate brief on October 4, 2023. Because Appellant's three issues, noted *supra*, were first raised with this Court on appeal within the context of a ***Bradley*** ineffectiveness claim, the PCRA court did not have an opportunity to substantively consider these three issues. As such, pursuant to ***Bradley***, we are constrained to vacate, in part, the PCRA court's December 5, 2023 order, and remand this case so the PCRA court can substantively consider Appellant's three issues.[13] ***See Bradley***, 261 A.3d at

---

[13] On October 13, 2023, Appellant filed *pro se*, with this Court, a "notice of intent to file another motion for appointment of substitute counsel with the [PCRA] court." The envelope Appellant used to mail his "notice" reveals a postage cancellation stamp of October 13, 2023. Therefore, we deem Appellant's "notice" as filed with this Court on October 13, 2023. ***See Jones***, 700 A.2d at 426. Moreover, although Appellant styles his "notice" filed with this Court as a request for leave to file a motion for the appointment of new

402 (permitting the remand of a case for further development of the record and consideration of the issues by the PCRA court as an initial matter).

Order affirmed, in part, and vacated, in part. Case remanded. Jurisdiction relinquished.

_____

PCRA counsel, we deem Appellant's "notice," for purpose of the case *sub judice*, as a motion for the appointment of new PCRA counsel.

In his "notice," Appellant requests that this Court permit him to file a motion seeking the appointment of new PCRA counsel pursuant to **Bradley**, **supra**. Appellant's *Pro Se* Motion, 10/13/23. In his *pro se* request for the appointment of replacement PCRA counsel, Appellant, relying on **Bradley**, **supra**, asserts that current PCRA counsel was ineffective for filing an appellate brief, on October 4, 2023, raising several issues that were not initially presented to the PCRA court and, therefore, are subject to waiver because they cannot be raised for the first time on appeal. **Id.**, *citing* Pa.R.A.P. 302(a); **Commonwealth v. Albrecht**, 720 A.2d 693, 704 (Pa. 1998).

As discussed *supra*, current PCRA counsel raised these three issues, asserting original PCRA counsel's ineffectiveness, within the context of a **Bradley** ineffectiveness claim in his October 4, 2023 appellate brief. Within the context of this **Bradley** claim, we find that the issues are not subject to waiver. Therefore, we dismiss Appellant's "notice" as moot.

Upon remand, however, the PCRA court shall first determine if Appellant wishes to proceed with current PCRA counsel or have new PCRA counsel appointed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


DATE: 02/23/2024